# IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| In the Matter of Melendez: | * | **Case No. 08-06925 (GAC)** |
| **William Eric Melendez,** | * | **Chapter 13** |
| **Debtor,** | * | |
| **William Eric Melendez,** | * | **Adversary No. 09-00090 (GAC)** |
| **Plaintiff,** | * | **Filed & Entered on 5/4/09** |
| **v.** | * | |
| **Mei-Ling Baez Godinez** | * | |
| **Defendant.** | * | |
| _____ | * | |

## OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND MOTION TO ABSTAIN

**TO THE HONORABLE COURT:**

**NOW COMES** defendant, Mei-Ling Baez Godinez ("Baez"), *Pro Se*, and respectfully states, alleges and prays as follows:

## I. INTRODUCTION

Present adversary proceeding should be dismissed for the following reasons: A) The present claims are subject to mandatory abstention; B) In its defect, the present claims are subject to Permissive Abstention; C) Melendez does not have a claim under Puerto Rico Law; and D) In the present case, there are genuine issues of material facts which prevent the issuance of a summary judgment in favor of Plaintiff

## II. STATEMENT OF UNCONTROVERTED MATERIAL FACTS

1. At all relevant times Plaintiff worked as a Computer Systems Analyst. (*See* **Exhibit 1.**)

2.      Presently, Plaintiff has over twenty years of experience in his field of work. (See **Exhibit 1.**)

3.      By Plaintiff's own admission, at the relevant time, Plaintiff worked from Oracle Corporation, KPMG Consulting and Deloitte and Touch. (*See* **Docket Document # 1, pp. 3-4, ¶¶ 8, 10 and 11.**) All multinational consulting firms with billions of dollars worth in consulting contracts. Plaintiff was indeed in the top bracket of his career.

4.      According to the Bureau of Labor Statistics, a Computer System Analyst in the top bracket of the career had the following annual wage:

| Year | Amount | Reference |
|------|--------|-----------|
| 1999 | $84,990.00 | Exhibit 2* |
| 2000 | $89,040.00 | Exhibit 3* |
| 2001 | $93,200.00 | Exhibit 4* |
| 2002 | $93,400.00 | Exhibit 5* |

*An accurate amount of Plaintiff of earnings would be the result of discovery to the Employers in ¶ 3 above.

5.      Close to the end of 1998 Baez accompanied Plaintiff to a branch of Banco Popular of Puerto Rico, located in Rio Piedras, for the purpose of getting a mortgage for purchasing a house located in Sevilla Biltmore C-20, Guaynabo, Puerto Rico 00969. At that time, the Bank Officer asked Melendez how much money he made. Baez heard when Melendez told the bank officer that he made about $115,000.00/annually. (*See* **Exhibit 1.**)

6.      At all relevant times Baez earned $880.00/month plus certain other sporadic amounts which were the result of Baez design work and clerk work at the Hotel La Playa. (*See* **Exhibit 1.**)

7.     By Plaintiff's own admission, Plaintiff was absent from Puerto Rico for most of the relevant time. (*See* **Docket Document # 1, Page 3, ¶ 8, Page 4, ¶¶ 10 and 11.**)

8.     MJMB suffers from Type 1 Diabetes, the most predatory kind of diabetes which requires constant care and supervision. (*See* **Exhibit 1.**)

9.     For the most part, it has been Baez who has taken care and supervised MJMB. (*See* **Exhibit 1.**)

10.    At all relevant times, Baez retained sole custody over MJMB. (*See* **Exhibit 1.**)

11.    At all relevant times, Baez was in charge of preparing and serving food to MJMB, MJMB kept the house clean and in order and Baez also took MJMB to school for her education and to the doctor in case of sickness. (*See* **Exhibit 1.**)

12.    During that time, Baez tried to work twice. In one occasion, Baez tried to work in design society and as part of the design team in the Banco Popular of Puerto Rico. On both occasions Plaintiff prevented Baez from pursuing a professional career design arguing that he gave me everything I needed and that our daughter, due to her medical condition, needed my constant presence. (*See* **Exhibit 1.**)

13.    Each time Plaintiff changed of jobs, he would automatically increase the amounts he would deposit on Baez account. (*See* **Exhibit 1.**)

14.    According to Plaintiff, each time he changed jobs he got better paid which was reflected in the voluntary increases he made on his deposits. (*See* **Exhibit 1.**)

15.    On November 30, 1994, the Superior Court, Bayamon Part, notified a judgment in Melendez v. Baez, Case No. D DI1992-3701. In its pertinent part, said Judgment:

      A.     Imposed on Plaintiff child support obligations;

      B.     Did not not impose on Baez any child support obligations;

       C.     Effectively liquidated the community property: a vehicle; and

       D.     Gave sole custody over MJMB to Baez.

(*See* **Exhibit # 6.**)

     16.     In 2003 Plaintiff filed a Reply in Melendez v. Baez, Case No. D DI1992-3701.

(See **Exhibit # 7.**)

     17.     All claims in the present case were first included in the Reply filed in the Puerto

Rico Court of First Instance: ***Melendez v. Baez, Civil No. D DI1992-3701***. (*See* **Exhibit 7 and**

and **Docket Document # 1.**)

     18.     Plaintiff initiated filed for bankruptcy under Chapter 13 on October 16, 2008.

(*See* **Docket Document # 1 of William Eric Melendez, Bankruptcy Case No. 08-06925.**)

     19.     On March 30, 2009, Baez filed a proof of claim for Domestic Support obligations

under 11 USC §507(a)(1)(A) or (a)(1)(B). (*See* **Claim No. 2 on the Claim Register of** *William*

*Eric Melendez, Bankruptcy No. 08-06925* and **Docket Document # 11, Exhibit 1.**)

     20.     On December 10, 2008, Baez filed an Appearance of child support representative

in *William Eric Melendez, Bankruptcy No. 08-06925.* The undersigned justified her

appearance as follows: "NOW COMES Mei-Ling Baez Godinez ("Baez"), **authorized**

**representative of child support creditor**, with respect to child support obligations of Debtor in

the present case..." (Emphasis added.) (See **Docket Document # 21, p. 1, of** *William Eric*

*Melendez, Bankruptcy No. 08-06925.*)

     21.     On December 10, 2008, Baez filed a document titled: "Urgent Motion to Dismiss

for Failure to Pay Current Domestic Support Obligations." Baez appeared as follows: "NOW

COMES Mei-Ling Baez Godinez ("Baez"), **authorized representative of child support**

**creditor**, with respect to child support obligations of Debtor in the present case..." (Emphasis

added.) (See **Docket Documents # 19, p. 1 of** *William Eric Melendez, Bankruptcy No. 08-06925.*)

     22.    On December 10, 2008, Baez filed a document titled: "Motion Requesting Relief From Complying With Local Rule 9070-1." Baez appeared as follows: "NOW COMES Mei-Ling Baez Godinez ("Baez"), **authorized representative of child support creditor**, with respect to child support obligations of Debtor in the present case…" (Emphasis added.) (See **Docket Documents # 20, p. 1, of** *William Eric Melendez, Bankruptcy No. 08-06925.*)

     23.    On December 21, 2008, Plaintiff filed a document titled: "Motion in Opposition of Urgent Motion to Dismiss." In its pertinent part, said document argues the following:

> **Assume as the creditor in fact should be the party filing Motion to dismiss in the event client is not meeting his domestic obligations payments, not Ms. Baez, as it is Assume who has the faculty as delegated by the Puerto Rico Court and it is Assume who can refute the evidence provided in Exhibits 1 and 2 over Debtor's compliance with his domestic obligations in interest of minor.**

(Emphasis added.) (*See* **Docket Document # 24, p. 2, ¶ 8 of** *William Eric Melendez, Bankruptcy No. 08-06925.*)

     24.    On January 16, 2009, Baez filed a document titled: "Second Urgent Motion to Dismiss for Failure to Pay Current Domestic Support Obligations." Baez appeared as follows: "NOW COMES Mei-Ling Baez Godinez ("Baez"), **authorized representative of child support creditor**, with respect to child support obligations of Debtor in the present case…" (Emphasis added.) (See **Docket Documents # 31, p. 1 of** *William Eric Melendez, Bankruptcy No. 08-06925.*)

     25.    On January 16, 2009, Baez filed a document titled: "Second Motion Requesting Relief From Complying With Local Rule 9070-1." Baez appeared as follows: "NOW COMES

Mei-Ling Baez Godinez ("Baez"), **authorized representative of child support creditor**, with

respect to child support obligations of Debtor in the present case..." (Emphasis added.) (See

**Docket Documents # 32, p. 1, of** *William Eric Melendez, Bankruptcy No. 08-06925.*)

26. On January 20, 2009, Plaintiff filed a complaint against Baez in the Puerto Rico

Court of First Instance: *Melendez v. Baez, Civil No. K CD2009-0159.* (*See* **Exhibit 8.**)

27. On January 29, 2009, the Court issued an order in the Chapter 13 case. In its

pertinent part, said order states the following: "... It is further ordered that the Clerk notify

ASUME to appear in the next hearing..." (See **Docket Document # 34 of** *William Eric*

*Melendez, Bankruptcy No. 08-06925.*)

28. On March 17, 2009, the Court issued an order in the Chapter 13 case. In its

pertinent part, said order states the following: "3) that a representative of ASUME shall appear at

the hearing." (See **Docket Document # 51 of** *William Eric Melendez, Bankruptcy No. 08-*

*06925.*)

29. On March 24, 2009, the Court issued an order in the Chapter 13 case. In its

pertinent part, said order states the following: "Based on the evidence presented by Asume's

representative which demonstrated that the debtor is up to date with the payments required post-

petition..."(See **Docket Document # 58 of** *William Eric Melendez, Bankruptcy No. 08-06925.*)

30. On May 1, 2009, Plaintiff filed the present complaint. (*See* **Docket Document #**

**1.**) In its pertinent part Plaintiff's complaint states the following:

> 1. This court has jurisdiction pursuant to **28 U.S.C. § 1334**
> over this claim, as one arising under Title 11 of the United States
> Code, as well as the effects its outcome will have on the estate
> being administered in bankruptcy.
>
> 2. The bankruptcy's court jurisdiction is derivative of and
> dependent upon the above basis, in the chapter 13 case **In re:**

**William Eric Melendez, No. 08-06925 (GAC)**, now pending in Court.

3.     This is a core proceeding under **28 U.S.C. § 157(c)**, as it relates to counterclaims by the estate – based on prepetition property interests-against persons filing claims against the estate…

(Emphasis in the original.) (*See* **Docket Document # 1, ¶¶ 1-3.**)

31.     All claims in the present case were also included in the Complaint filed in the Puerto Rico Court of First Instance: *Melendez v. Baez, Civil No. K CD2009-0159.* (*See* **Exhibit 8, ¶¶ 20, 26, 28, 29, 30, and 31** and **Docket Document # 1.**)

32.     On May 29, 2009, Baez filed her Answer to the Complaint.  In its pertinent part, said Answer states the following:

> 3.  The allegations in paragraph 3 of the Complaint are denied. Baez specifically admits that the above captioned claim is NOT a core proceeding.  The claim filed against the estate was for outstanding domestic support.  Therefore, the claim against Plaintiff's estate was filed on behalf of a minor, Plaintiff's daughter. (*See* **Exhibit 1.**)  In turn, this adversary proceeding is against Baez in her personal capacity, a different party altogether.

> (…)

> **IV.     BAEZ' STATEMENT UNDER FEDERAL RULE 7012(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

> 21.  Since the present is not a core proceeding, **Baez does NOT consent to entry of final orders or judgment by the bankruptcy judge.** (*See* **¶ 3 above.**)



(*See* **Docket Document # 11, ¶ 3 and ¶ 21, pages 1 and 4.**)

33.     On June 1, 2009, Plaintiff filed a document titled: "Motion for Summary Judgment."  According to Plaintiff, his claims against Baez arise out of **Puerto Rico Civil Code Art. 45, Art. 153, Art. 1,112 and Art. 1,856** as interpreted by certain Puerto Rico cases. (*See* **Docket Document # 14, ¶¶ 15-24. Pages 5-8.**)

34. Presently, Plaintiff's child support obligations amount to $2,484.00/month. (*See*

**Exhibit # 9.)**

III.    LEGAL  DISCUSSION

Present adversary proceeding should be dismissed for the following reasons: A) the

present claims are subject to mandatory abstention; B) In its defect, Present Claims are subject to

Permissive Abstention; C) Melendez does not have a claim under Puerto Rico Law; and C) In the

present case, there are genuine issues of material facts which prevent the issuance of a summary

judgment in favor of Plaintiff

A.    THE PRESENT CLAIMS ARE SUBJECT TO MANDATORY ABSTENTION

The present claims are subject to mandatory abstention.  Section 1334(c) (2) of Title 28,

United States Code, provide:

> Upon timely motion of a party in a proceeding based upon State
> law claim or State law cause of action, related to a case under title
> 11 but not arising under title 11 or arising in a case under title 11,
> with respect to which an action could not have been commenced in
> a court of the United States absent jurisdiction under this section,
> the district court shall abstain from  hearing such proceeding if an
> action is commenced, and can be timely adjudicated, in a State
> forum of appropriate jurisdiction.

With regards to mandatory abstention, Collier on Bankruptcy provides the following:

> Section 1334 (c)(2) applies only to civil proceedings that are
> "related to a case under Title 11," not those that arise under Title
> 11 or arise in a case under Title 11… "related" proceedings are
> those that were owned by the debtor at the time the bankruptcy
> case was filed and became part of the estate pursuant to section
> 541(a)…

> The criteria that call mandatory abstention under section
> 1334(c)(2) are  (1) a party to the proceeding files a timely motion
> to abstain; (2) the proceeding is based upon state law claim or state
> law cause of action; (3) the proceeding is a related (non-core)
> proceeding; (4) absent section 1334(b), the cause of action (one

"related" to the bankruptcy case) could not have been commenced in a federal court; and (5) the proceeding is commenced and can be timely adjudicated in a state forum. ***McDaniel v. ABN Amro Mtg. Corp. 364 B.R. 644, 649 (S.D. Ohio 2007); Massey Energy Co. v. West Va. Consumers for Justice, 56 C.B.C.2d 1585, 351 B.R. 348, 350 (E.D. Va. 2006)...***

(*See* **Jurisdiction and Powers of Courts, Collier on Bankruptcy, Volume 1, ¶ 3.05[2], pages 3-61 to 3-62.**)

1.     THE PRESENT MOTION IS TIMELY

The present complaint was filed on May 1, 2009. (*See* **Docket Document # 1.**)   That is one month and fourteen (14) days ago.  Consequently the present motion is timely.

2.     THE PRESENT PROCEEDING IS BASED UPON STATE LAW
        CLAIM OR STATE LAW CAUSES OF ACTION

The present proceeding is based upon state law claim or state law cause of action.



Plaintiff claims against Baez arise out of **Puerto Rico Civil Code Art. 45, Art. 153, Art. 1,112** and **Art. 1,856** as interpreted by certain Puerto Rico cases.  (*See* **Docket Document # 14, ¶¶ 15-24. Pages 5-8.**)  Obviously, Plaintiff's claims are based upon Puerto Rico state law or are a Puerto Rico state law cause of action.

3.     THE PRESENT PROCEEDING IS A RELATED (NON-CORE)
        PROCEEDING

The present proceeding is a related (non-core) proceeding.  Collier on Bankruptcy defines related proceedings as follows:

> By far the largest number of reported cases dealing with bankruptcy jurisdiction over civil proceedings are concerned with whether a particular proceeding is "related to" a title 11 case. These cases are of two kinds.  The first concerns whether, at one extreme, a particular civil proceeding is "core" or "related"; the second concerns whether, at the other, a civil proceeding is

9

"related" or is not within the bankruptcy jurisdiction granted by section 1334(b) at all.

... related proceedings are handled differently from core proceedings in the abstention provisions of 28 U.S.C. § 1334 (c)(2), are excluded from being treated as "core proceedings" by 28 U.S.C. § 157(b)(1) and are the subject of special procedures contained in subsections 157(c)(1) and (c)(2). It is therefore of some importance to be able to understand and categorize related proceedings.

... civil proceedings encompassed by section 1334(b)'s "related proceedings" are those whose outcome could conceivably have an effect on the bankruptcy estate and that (1) involve causes of action owned by the debtor that became property of a title 11 estate under section 541...

(*See* **Jurisdiction and Powers of Courts, Collier on Bankruptcy, Volume 1, ¶ 3.01[4][c][ii],**

**pages 3-21.**)

Collier on Bankruptcy gives us an example of a non-core related proceeding:

Another example of a non-core "related" proceeding is that involved in *Marathon* itself: a cause of action owned by the debtor at the time the title 11 case is commenced, and which becomes part of the estate created by section 541 of the "Bankruptcy Code."

(*See* **Jurisdiction and Powers of Courts, Collier on Bankruptcy, Volume 1, ¶ 3.02[3], page**

**3-33.**)

Collier on Bankruptcy comments on causes of action owned by the debtor at the time the

title 11 case was filed:

... Each of these cases involved a cause of action owned by the debtor at the time the title 11 case was filed which, by definition, is a "related matter" not within the meaning of core proceedings. Other courts have realized that *Marathon* cannot be so easily disposed of or ignored and have had no difficulty holding that such cases are entitled to "related" treatment. Craig v. Airbrake Controls, Inc. (*In re* Crabtree), 55 B.R. 130 (Bankr. E.D. Tenn. 1985); In re Maislin Indus., U.S., Inc., 13 C.B.C.2d 316, 50 B.R.

943 (Bankr. E.D. Mich. 1985); Appel. V. Mainstar Oil Co. (In re B&L Oil Co.), 46 B.R. 731 (Bankr. D. Colo. 1985).

*(See* **Jurisdiction and Powers of Courts, Collier on Bankruptcy, Volume 1, ¶ 3.02[3][c],**

**page 3-38.)**

Baez admits that the present case could "conceivably" have an effect on the bankruptcy

estate and it involves causes of action owned by the debtor that became property of a title 11

estate under section 541. Therefore the present claims are "related" to a Title 11 case.

In order to justify bankruptcy court's jurisdiction over the present proceedings, Plaintiff

alleges that the present claims arise under Title 11 and that the present claims are actually

counterclaims by the estate against persons filing claims against the estate. On May 1, 2009,

Plaintiff filed the present complaint. *(See* **Docket Document # 1.)** In its pertinent part Plaintiff's

complaint states the following:



> 1.    This court has  jurisdiction pursuant to **28 U.S.C. § 1334** over this claim, as one arising under Title 11 of the United States Code, as well as the effects its outcome will have on the estate being administered in bankruptcy.
>
> 2.    The bankruptcy's court jurisdiction is derivative of and dependent upon the above basis, in the chapter 13 case **In re: William Eric Melendez, No. 08-06925 (GAC)**, now pending in Court.
>
> 3.    This is a core proceeding under **28 U.S.C. § 157(c)**, as it relates to counterclaims by the estate – based on prepetition property interests-against persons filing claims against the estate...

(Emphasis in the original.) *(See* **Docket Document # 1, ¶¶ 1-3.)**

We will show that the present proceeding does not arise under Title 11 of the United

States Code nor is it a counterclaim by the estate against persons filing claims against the estate.

a.    THE PRESENT PROCEEDING DOES NOT ARISE UNDER
       TITLE 11 OF THE UNITED STATES CODE

The present proceeding does not arise under Title 11 of the United States Code. Collier on Bankruptcy defines "arising under Title 11" as follows:

> Congress has furnished guidance in interpreting the phrase "civil proceedings arising under Title 11":
>
>> The phrase "arising under" has a well defined and broad meaning in the jurisdictional context. By a grant of jurisdiction over all proceedings arising under title 11, the bankruptcy courts will be able to hear any matter under which a claim is made under a provision of Title 11. For example, a claim of exemption under 11 U.S.C. § 522 would be cognizable by the bankruptcy court, as would a claim of discrimination in violation of 11 U.S.C. § 525. Any action by the trustee under an avoiding power would be a proceeding arising under Title 11, because the trustee would be claiming based on a right given by one of the sections in subchapter III of chapter 5 of title 11. H.R. Rep. No. 595, 95th Cong., 1st Sess. 445 (1977), reprinted in App. Pt. 4(d)(i) infra.
>
> What this language seems to mean is that, **when a cause of action is one that is created by title 11, then that civil proceeding is one "arising under title 11."**

(Emphasis added.) (*See* **Jurisdiction and Powers of Courts, Collier on Bankruptcy, Volume 1, ¶ 3.01[4][c], pages 3-18 to 3-19.**)

In the present case, Plaintiff filed a document titled: "Motion for Summary Judgment." According to Plaintiff, his claims against Baez arise out of **Puerto Rico Civil Code Art. 45, Art. 153, Art. 1,112** and **Art. 1,856** as interpreted by certain Puerto Rico cases. (*See* **Docket Document # 14, ¶¶ 15-24. Pages 5-8.**) None of these claims "arise under Title 11."

> b. THE PRESENT PROCEEDING IS NOT A COUNTERCLAIM BY THE ESTATE AGAINST PERSONS FILING CLAIMS AGAINST THE ESTATE

The present proceeding is not a counterclaim by the estate against persons filing claims against the estate. The viability of Plaintiff's claims hinges on whether the present proceeding is a "core" proceeding or a "non-core" proceeding. In order to depict the present proceedings as "core proceedings" Plaintiff alleges that the present proceeding is actually a "counterclaim by the estate against a person filing claims against the estate."

Section 157(b)(2) of Title 28, United States Code, provides as follows: "Core proceedings include, but are not limited to-... (C) counterclaims by the estate against persons filing claims against the estate;"

From the outset it should be noted that filing a proof of claim is not tantamount to conferring jurisdiction over the claimant to the bankruptcy court:

> Footnote 31 in the plurality opinion in Marathon suggests that there are constitutional doubts as to whether filing a proof of claim can [subject claimant to core treatment of all counterclaims that may be filed by a trustee]. If such is the case, then the counterclaim will be treated as a related matter and the dispositive order entered by the district court pursuant to 28 U.S.C. § 157(c).

(*See* **Jurisdiction and Powers of Courts, Collier on Bankruptcy, Volume 1, ¶ 3.02[3][d], pages 3-40.**)

Thus, there are constitutional doubts as to whether Baez should be subjected to core treatment for counterclaims herein.

In fact, according to Collier on Bankruptcy, in some instances, counterclaims by the estate against persons filing claims against the estate must be treated as related:

> ... Marathon type claims, that is those essentially based on state law causes of action must be treated as related. Nanodata Computer Corp. v. Space Circuits, Ltd. (In re Nanodata Computer Corp.), 52 B.R. 334 (Bankr. W.D.N.Y. 1985), aff'd on other grounds sub nom. Intellik Computer Corp. v. Kollmorgen Corp. (In re Nanodata Computer Corp.), 74 B.R. 766 (W.D.N.Y. 1987); Braucher v. Continental Ill. Nat'l Bank & Trust Co. of Chicago

13

(In re Illinois-California Express, Inc.), 13 C.B.C. 2d 324, 50 B.R.
232 (Bankr. D. Colo. 1985).

(*See* **Jurisdiction and Powers of Courts, Collier on Bankruptcy, Volume 1, ¶ 3.02[3][d],**

**pages 3-40 to 3-41.**)

Since the present case is exclusively predicated upon state law causes of action, then the

present proceeding should be treated as "related." Baez adopts by reference discussion above in

Subsection (III)(A)(2): The present proceeding is based upon state law claim or state law cause

of action, p. 9.

With regards to claims not arising out of the same transaction, Collier on Bankruptcy

explains as follows: "Until the Supreme Court sees fit specifically to disavow the Katchen

rationale, it seems that... (3) counterclaims not arising out of the same transaction should be

treated as related." (*See* **Jurisdiction and Powers of Courts, Collier on Bankruptcy, Volume**

**1, ¶ 3.02[3][d], pages 3-41.**)

On the one hand, Baez filed a proof of claim for Domestic Support obligations under 11

USC §507(a)(1)(A) or (a)(1)(B) on March 30, 2009. (*See* **Claim No. 2 on the Claim Register of**

*William Eric Melendez, Bankruptcy No. 08-06925* and **Docket Document # 11, Exhibit 1.**)

On the other hand, On June 1, 2009, Plaintiff filed a document titled: "Motion for Summary

Judgment" on June 1, 2009. According to Plaintiff, his claims against Baez arise out of **Puerto**

**Rico Civil Code Art. 45, Art. 153, Art. 1,112** and **Art. 1,856** as interpreted by certain Puerto

Rico cases. (*See* **Docket Document # 14, ¶¶ 15-24. Pages 5-8.**) Evidently, Plaintiff's

counterclaim does not arise out of the same transaction.

Collier also gives us an example identical to the case at hand that clearly explains that the

present is a non-core proceeding:

14

>    Thus, if A files a proof of claim in the debtor's case and the
>    debtor objects to the claim on state law grounds… the resolution of
>    the controversy is generally a core matter that can be heard and
>    determined by the bankruptcy judge.  **If A had not filed a proof of
>    claim, and the debtor sued A on the same grounds upon which
>    it based its objection, the litigation would be non-core, and the
>    bankruptcy judge could not enter a dispositive order.**

(Emphasis added.) (*See* **Jurisdiction and Powers of Courts, Collier on Bankruptcy, Volume 1, ¶ 3.02[3][a], page 3-36.**)

In the bankruptcy case, on March 30, 2009, **Baez filed a proof of claim for Domestic Support obligations under 11 USC §507(a)(1)(A) or (a)(1)(B).** (*See* **Claim No. 2 on the Claim Register of *William Eric Melendez, Bankruptcy No. 08-06925* and Docket Document # 11, Exhibit 1.**) In addition, Baez appeared in the bankruptcy case five (5) times as part of two (2) separate efforts to get the case dismissed for Plaintiff's failure to pay current child support obligations. On each occasion Baez appeared as follows: "NOW COMES Mei-Ling Baez Godinez ("Baez"), **authorized representative of child support creditor**, with respect to child support obligations of Debtor in the present case…" (Emphasis added.) (*See* **Docket Documents # 19, p. 1, #20, p. 1, #21, p. 1, # 31, p. 1 and # 32, p. 1, of *William Eric Melendez, Bankruptcy No. 08-06925*.**)

In turn, on December 21, 2008, Plaintiff filed a document titled: "Motion in Opposition of Urgent Motion to Dismiss." In its pertinent part, said document argues the following:

>    **Asume as the creditor in fact should be the party filing
>    Motion to dismiss in the event client is not meeting his
>    domestic obligations payments, not Ms. Baez, as it is Asume
>    who has the faculty as delegated by the Puerto Rico Court and
>    it is Asume who can refute the evidence provided in Exhibits 1
>    and 2 over Debtor's compliance with his domestic obligations
>    in interest of minor.**

(Emphasis added.) (*See* **Docket Document # 24, p. 2, ¶ 8 of** *William Eric Melendez,*

*Bankruptcy No. 08-06925.*)

  The bankruptcy Court agreed with Plaintiff that Asume was the "creditor in fact" and

disavowed Baez as authorized representative of child support creditor.  On January 29, 2009, the

Court issued an order in the Chapter 13 case.  In its pertinent part, said order states the following:

"… It is further ordered that the Clerk notify ASUME to appear in the next hearing…" (See

**Docket Document # 34 of** *William Eric Melendez, Bankruptcy No. 08-06925.*)  Later, on

March 17, 2009, the Court issued an order in the Chapter 13 case.  In its pertinent part, said order

states the following: "3) that a representative of ASUME shall appear at the hearing." (See

**Docket Document # 51 of** *William Eric Melendez, Bankruptcy No. 08-06925.*)  Finally, on

March 24, 2009, the Court issued an order in the Chapter 13 case.  In its pertinent part, said order

states the following: "Based on the evidence presented by Asume's representative which

demonstrated that the debtor is up to date with the payments required post-petition…"(See

**Docket Document # 58 of** *William Eric Melendez, Bankruptcy No. 08-06925.*)

  Moreover, on May 29, 2009, Baez filed her Answer to the Complaint.  In its pertinent

part, said Answer states the following:

> 3. The allegations in paragraph 3 of the Complaint are denied.
> Baez specifically admits that the above captioned claim is NOT a
> core proceeding.  The claim filed against the estate was for
> outstanding domestic support.  Therefore, the claim against
> Plaintiff's estate was filed on behalf of a minor, Plaintiff's
> daughter. (*See* **Exhibit 1.**)  In turn, this adversary proceeding is
> against Baez in her personal capacity, a different party altogether.
>
> (…)
>
> **V. BAEZ' STATEMENT UNDER FEDERAL RULE
> 7012(b) OF THE FEDERAL RULES OF BANKRUPTCY
> PROCEDURE**

21. Since the present is not a core proceeding, **Baez does NOT consent to entry of final orders or judgment by the bankruptcy judge**. (*See* ¶ 3 above.)

(*See* **Docket Document # 11, ¶ 3 and ¶ 21, pags. 1 and 4.**)

Obviously, Asume not Baez is the "creditor in fact" in the bankruptcy court.

Consequently, by Plaintiff's own admission and by judicial resolution, Baez herself is not a

"person filing a claim against [Plaintiff's] estate." Therefore, the present proceeding is a related

non-core proceeding.

      4.    ABSENT SECTION 1334(b), THE CAUSE OF ACTION (ONE
           "RELATED TO THE BANKRUPTCY CASE COULD NOT HAVE
           BEEN COMMENCED IN FEDERAL COURT

Absent section 1334(b), the cause of action (one "related" to the bankruptcy case) could

not have been commenced in a federal court. Baez adopts by reference her discussion above in

Subsection (III)(A)(2): The present proceeding is based upon state law claim or state law cause

of action, page 9. Baez also adopts by reference her discussion above in Subsection (III)(A)(3):

The present proceeding is a related (non-core) proceeding, pages 9-16.

In addition, there is no diversity jurisdiction. 28 USC §1332(a)(1) states the following: "

**(a)** The district courts shall have original jurisdiction of all civil actions where the matter in

controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is

between— **(1)** citizens of different States." Baez remarks that both Plaintiff and herself are

residents of Puerto Rico and that Plaintiff claims herein amount to: $27,782.00. (*See* **Docket**

**Document # 1, page 6.**) Evidently, there is no diversity jurisdiction.

      5.    THE PROCEEDING IS COMMENCED AND CAN BE TIMELY
           ADJUDICATED IN A STATE FORUM

The proceeding is commenced and can be timely adjudicated in a state forum. In 2003

Plaintiff filed a Reply in *Melendez v. Baez, Case No. D DI1992-3701*. (See **Exhibit # 7.**) On

January 20, 2009, Plaintiff filed a complaint against Baez in the Puerto Rico Court of First

Instance: *Melendez v. Baez, Civil No. K CD2009-0159.* (*See* **Exhibit 8.**) On May 1, 2009,

Plaintiff filed the present complaint. (*See* **Docket Document # 1.**)   All claims in the present case

were first included in the Reply filed in the Puerto Rico Court of First Instance: *Melendez v.*

*Baez, Civil No. D DI1992-3701.* (*See* **Exhibit 7** and **Docket Document # 1.**)  In addition, all

claims in the present case were first included in the Complaint filed in the Puerto Rico Court of

First Instance: *Melendez v. Baez, Civil No. K CD2009-0159.* (*See* **Exhibit 8, ¶¶ 20, 26, 28, 29,**

**30, and 31** and **Docket Document # 1.**) Consequently, the proceeding is commenced and can be

timely adjudicated in a state forum.

> B.   IN ITS DEFECT, PRESENT CLAIMS ARE SUBJECT TO PERMISSIVE
>      ABSTENTION

In its defect, Present Claims are subject to Permissive Abstention.  Section 1334(c)(1) of

Title  28 of the United States Code, provides:

> Except with respect to a case under chapter 15 of title 11, nothing
> in this section prevents a district court in the interest of justice, or
> in the interest of comity with State courts or respect for State law,
> from abstaining from hearing a particular proceeding arising under
> Title 11or arising in or related to a case under Title 11.

Collier on Bankruptcy explains Permissive Abstention as follows:

> Section 1334(c) is not unlike the philosophy that governed
> abstention under the 1898 Bankruptcy Act.  Under that statute, a
> bankruptcy judge could abstain from hearing a matter even if the
> court had jurisdiction over the controversy.  In some instances, the
> court was under a duty to allow the litigation of a particular
> question or controversy to go forward in a nonbankruptcy forum.
> In Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 60 S. Ct.
> 628, 84 L. Ed. 876 (1940), Mr. Justice Black, while reaffirming the
> principle that the bankruptcy or reorganization court had "an
> exclusive nondelegable control over the administration of an estate
> in its possession," (309 U.S 478, 60 S. Ct. 628, 84 L. Ed. 876, 880)
> said:

  
But the proper exercise of that control may, where the interest of the estate and the parties will be best served, lead the bankruptcy court to consent to submission to state courts of particular controversies involving unsettled questions of state property law and arising in the course of bankruptcy administration. And, under the circumstances of this case, we conclude that it is desirable to have the litigation proceed in the state courts of Illinois. An order to the trustee to proceed in the Illinois courts for a decision on the ownership of the fee to the right of way lands will be comparable to one in which the bankruptcy court, preserving the *status quo*, the while, orders a trustee to determine in a plenary state suit the legal right to property alleged by the trustee to have been fraudulently transferred by the bankrupt. Decision with which the federal court of bankruptcy is here faced calls for interpretation of instruments of conveyance in accordance with Illinois law. Neither statute nor decisions of Illinois have been pointed to which are clearly applicable. And the difficulties of determining just what would be the decision under the law of that state are persuasively indicated by different results reached by the two Circuit Courts of Appeal that have attempted the determination. Unless the matter is referred to the state courts, upon subsequent decision by the Supreme Court of Illinois it may appear that rights in local property of parties to this proceeding have –by accident of federal jurisdiction-been determined contrary to the law of the state which in such matters is supreme. (309 U.S. 478, 483-84, 60 S. Ct. 628, 630-31, 84 L. Ed. 876, 880-81.)



… Indeed, as one court noted, "**Magnolia Petroleum and section 1334(c)(1) mandate that a federal court exercising bankruptcy jurisdiction 'defer to a State court for determination of a particularly unusual question' of State law**." Coker v. Pan Am. World Airways, Inc. (In re Pan American Corp.), 950 F. 2d 839, 846, 26 C.B.C.2d 20, 28 (2d Cir. 1991).

(Emphasis added.) (*See* **Jurisdiction and Powers of Courts, Collier on Bankruptcy, Volume 1, ¶ 3.05[1], pages 3-59 to 3-60.**)

In the present proceeding, on June 1, 2009, Plaintiff filed a document titled: "Motion for Summary Judgment." According to Plaintiff, his claims against Baez arise out of **Puerto Rico Civil Code Art. 45, Art. 153, Art. 1,112** and **Art. 1,856** as interpreted by certain Puerto Rico

cases. (*See* **Docket Document # 14, ¶¶ 15-24. Pages 5-8.**) A review of the cases cited by

Plaintiff demonstrates that the facts herein are materially different from the cases cited. On the

one hand, there is no community of property being liquidated between Plaintiff and Baez. On

the other hand, Baez has never failed to comply with her domestic support obligations.

Therefore, Plaintiff seeks to trick this Court into making a new and broader interpretation of the

right to reimbursement as defined in the cases cited by Plaintiff himself. Under these

circumstances, the bankruptcy court should defer to Puerto Rico court the determination of this

"particularly unusual question of State law."

Please note, in the eventuality that this Court should find that the present proceeding is a

"core" proceeding, then the court still has the discretion to abstain:

> Section 1334(c)(1) is not mandatory; it merely gives the district
> court the discretion to abstain if abstention is in the interest of
> justice, or in the interest of comity with State courts or respect for
> State law...

> To be contrasted is section 1334(c)(2), which is applicable only to
> proceedings based upon state law claims or causes of action
> "related to" a case under title 11 but not arising under title 11 or
> arising in a case under title 11. **Section 1334(c)(1) thus applies to
> core matters as well as to related matters.**



> Therefore in one sense the discretion to abstain granted by section
> 1334(c)(1) is broader than the semi-mandate to abstain contained
> in section 1334(c)(2), because section 1334(c)(1) applies to
> broader range of civil proceedings.

(Emphasis added.) (*See* **Jurisdiction and Powers of Courts, Collier on Bankruptcy, Volume**

**1, ¶ 3.05[1], pages 3-60 to 3-61.**)

Collier on Bankruptcy suggests that unsettled questions of state property state law are

best served by the expertise of State Courts:

> As indicated, the Supreme Court in Thompson v. Magnolia
> Petroleum Co., is of continued validity. Thompson v. Magnolia

Petroleum, 309 U.S. 478, 60 S. Ct. 628, 84 L. Ed. 876 (1940).
There will indeed be circumstances when:

> The interest of the estate and the parties will best be served
> [if the district court will] consent to submission to state
> courts of particular controversies involving unsettled
> questions of state property law and arising in the course of
> bankruptcy administration.

(*See* **Jurisdiction and Powers of Courts, Collier on Bankruptcy, Volume 1, ¶ 3.05[1], page**

**3-61.**)

As explained above, Plaintiff seeks a novel broader interpretation of applicable State Law

via cases clearly distinguishable from the case at hand. Since this particular controversy

involves unsettled questions of state property law the interest of the estate and the parties will be

best served if the bankruptcy court consents to submission of the present controversies to the

state court.

C.      PLAINTIFF DOES NOT HAVE A CLAIM UNDER PUERTO RICO LAW

Plaintiff does not have a claim under Puerto Rico Law: 1) in the present case, Plantiff

cannot get a credit in the liquidation of community property because there is no community

property to liquidate; 2) Baez fulfilled her domestic support obligations; 3) Plaintiff did not pay

in excess to what he had to pay; and 4) In Puerto Rico contracts in excess of $300.00 must be in

writing.

1.      IN THE PRESENT CASE PLAINTIFF CANNOT GET A CREDIT IN
THE LIQUIDATION OF COMMUNITY PROPERTY BECAUSE
THERE IS NO COMMUNITY PROPERTY TO LIQUIDATE

In the present case plaintiff cannot get a credit in the liquidation of community property

because there is no community property to liquidate. In all cases cited by Plaintiff, an ex-spouse

supporting parent who pays in excess of what he was supposed to pay for domestic support

obligation only gets a credit in the liquidation of community property he had with other ex-spouse who is also a supporting parent.

In **Lopez Martinez v. Yordan, 104 D.P.R. 594, 597 (1976) [15 P.R. Offic. Trans. 832, 836]** the Puerto Rico Supreme Court held that any payment for the proportional part of the other spouse only gets a credit in the liquidation of community property:

> During a long period of time, since the divorce until March 1973, appellant paid $55,000 for support of his three children, amount which the trial judge refused to charge to the marital community. The situation is governed by Art. 153 of the Civil Code (31 L.P.R.A. § 601) which imposes the obligation to support the unemancipated children on the father as well as on the mother, and specifically by Art. 145 (31 L.P.R.A. § 564 upon providing that when the amount that each shall pay shall be proportionate to his respective estate. **In the liquidation [of Community Property] a credit has to be acknowledge to the husband for the proportional part of said support to be paid by the mother of the ones who receive the support** . Said proportion is a question to be fixed by the trial court after determining the "respective estate" of each ex-spouse. (Emphasis added)

In Calvo **Mangas v. Aragones Jimenez, 115 D.P.R. 219, 229 (1984)[15 D.P.R. Offic. Trans. 294, 308]**, the Puerto Rico Supreme Court entertained a claim where one party sought to liquidate the community Property. In **Calvo Mangas, supra,** the Puerto Rico Supreme held the following:

> … Once the marriage is dissolved and **until marital community is liquidated** child support is divided between the parents in proportion to their assets in the community property. Lopez Martinez v. Yordan, 104 D.P.R. 594, 597 (1976). **If any of the spouse pays an amount in excess of what he or she had to, he or she would have a credit [in the community property] for that excess**. See Lopez Martinez v. Yordan, supra, at 597-598."

Later that same year, in **Mundo v. Cervoni, 115 D.P.R. 422, __ (1984)[15 P.R. Offic. Trans. 555, 558]** the Supreme Court entertained a case where:

The judgment of the trial court dealing with the Liquidation of community property of plaintiff Olga Mundo and defendant Francisco Cervoni gave him, among other things, a credit against his ex-wife's property amounting to 57% of the child support paid by him for the three children of the marriage dissolved.

In **Mundo, p. 559,** the Puerto Rico Supreme Court held the following: "... **upon liquidating the community property**, the parent giving support may claim a credit against the other parent giving support only for the payment in excess of the fair amount agreed upon or fixed by the court."

Later in **Mundo, p. 561,** the Puerto Rico Supreme Court still makes reference to a credit in the liquidation of community property:

In these circumstances, giving defendant a support credit against the property of his ex-wife would be tantamount to releasing him from paying 57% of his obligations to support. The admissible credit is limited to what a party has paid "in excess of what he or she [has] to." Calvo Mangas v. Aragones Jimenez, 115 D.P.R. 219, 229 (1984).

Finally, in **Mundo, p. 563,** the Puerto Rico Supreme Court ordered the following:

The writ shall be issued and the judgment reviewed will be modified only for the purpose of eliminating the 57% credit of $14,936 for child support granted to defendant-appellee in the liquidation of the community property. The case will be remanded to the trial court for the corresponding adjustment.

In **Figueroa Robledo v. Rivera Rosa, 149 D.P.R. 557, 572-573 (1999)** the Puerto Rico Supreme Court held that when one ex spouse and supporting parent has paid in excess of what s/he should have paid, at the moment of liquidating the community property, said ex spouse supporting parent has a credit in the community property for the amount that should have been paid by the other supporting parent.[1]

---

[1] Spanish Original: En aquellas ocasiones en que uno de los padres alimentantes ha pagado en exceso de lo que le corresponde, hemos determinado que procede reconocerle, al momento de llevar a cabo la liquidación de los bienes gananciales , un crédito por la parte que le correspondía pagar al otro ex conyuge también alimentante. Lopez

23

In **Figueroa Robledo, p. 578,** the Puerto Rico Supreme Court held that when liquidating community property, the court of first instance has to take into account any cause of action for reimbursement. "Any credit to which Ms. Rivera Rosa is entitled must be satisfied Mr. Figueroa Robledo's personal goods."[2]

In the present case, on November 30, 1994, the Superior Court, Bayamon Part, notified a judgment in **Melendez v. Baez, Case No. D DI1992-3701.** In its pertinent part, said Judgment imposed on Plaintiff child support obligations. Said judgment did not impose on Baez any child support obligations. In addition, said judgment effectively liquidated the community property: a vehicle. (*See* **Exhibit # 6, Pag. 3.**) Since there is no community of property between the parties in the instant case, Plaintiff cannot get a credit in the liquidation of community property.

2.     BAEZ FULFILLED HER CHILD SUPPORT OBLIGATIONS

Baez fulfilled her domestic support obligations. In **Mundo, p. 559,** the Puerto Rico Supreme Court held the following regarding the child support obligations of a custodial parent:

> ... the personal work of a spouse who, upon managing child support, turns and devotes it to all things indispensable for maintenance, housing, clothing, and medical care of his or her children (art. 142) of the Civil Code) should, be considered a discharge of his or her own obligations to support, and constitutes an element to be weighed by the trier upon settling a credit claim between solidary child-support providers.

(See also **Figueroa Robledo, p. 572, and Montalvan v. Rodriguez, 161 D.P.R. 411, 430,**

**Footnote (5).**)

---

Martinez v. Yordan, supra. De igual modo, en Calvo Mangas v. Aragones Jimenez, 115 D.P.R. 219 (1984) , reconocimos expresamente que cuando un padre alimentante paga en exceso de lo que le corresponde, tiene un crédito a su favor por ese excedente.
[2] Spanish Original: Procede que al momento de decretar la liquidación de bienes gananciales, el Tribunal de instancia tome consideración la procedencia de la acción de reembolso. El crédito, si alguno, que corresponde a la señora Rivera Rosa ha de ser satisfecho de los bienes personales del señor Figueroa Robledo.

Later in **Mundo, p. 561-562,** the Supreme Court of Puerto Rico explained further the

discharge of child support obligations of custodial parent:

> The father who regularly pays a specific amount of money,
> contributes to the support of the children, just as the mother who
> with her work and energy succeeds in attaining the purpose of the
> support allowance by preparing and serving food to her children,
> keeping the house clean and in order, taking the children to school
> for their education and to the doctor in case of sickness. There is
> no moral or legal basis to conclude that a mother who acts in such
> a fashion is shrinking from her duty to feed her unemancipated
> children, as provided by art. 153; neither can we underestimate her
> physical and emotional contribution to the support of her children
> by reducing it to zero when the moment comes to liquidate the
> community property, and giving the husband a credit against her
> because she failed to contribute proportionally with money.

In the present case, Plaintiff and Baez have a daughter: MJMB. MJMB suffers from

Type 1 Diabetes, the most predatory kind of diabetes which requires constant care and

supervision. For the most part, it has been Baez who has taken care and supervised MJMB. At

all relevant times, Baez retained sole custody over MJMB. Baez was the custodial parent in

charge of preparing and serving food to MJMB, MJMB kept the house clean and in order and

Baez also took MJMB to school for her education and to the doctor in case of sickness. (*See*

**Exhibit 1.**) Indeed, on November 30, 1994, the Superior Court, Bayamon Part, notified a

judgment in Melendez v. Baez, Case No. D DI1992-3701. In its pertinent part, said Judgment:

Gave sole custody over MJMB to Baez. (*See* **Exhibit # 1, pag.** 1, ¶ 2.) By Plaintiff's own

admission, Plaintiff was absent from Puerto Rico at all relevant times, leaving Baez as the sole

caretaker of MJMB. (*See* **Docket Document # 1, Page 3, ¶ 8, Page 4, ¶¶ 10 and 11.**)

Evidently, Baez fulfilled her child support duties.

In turn, Plaintiff seeks to use **Rivera Robledo, supra,** for the proposition that "the proper

means by which to claim money owed to plaintiff – who as in this case was overpaid child

support – is the action of demand for reimbursement. (See **Docket Document # 14, Pag. 8, ¶ 24.**)

**Rivera Robledo, supra,** stands for a somewhat different proposition, one that actually favors Baez. In **Rivera Robledo, supra,** the Puerto Rico Supreme Court case entertained the following situation: a married couple with four (4) minor children got a divorce. The First Instance Court ordered the father the payment of child support obligations: $300.00/month. The minor children remained under the custody of the mother. The court did not impose on the mother the payment of child support obligations. The community of property, a house, remained under possession of the mother until four years after the youngest child became an adult. At such time the father requested the liquidation of the community of property. In his request for liquidation, the father explained that the house had remained under the sole possession and enjoyment of the mother since the dissolution of the marriage. Thus, the father asked for a credit in the community property for rents enjoyed by the mother and for half of mortgage payments since the youngest child became an adult. In turn, the mother alleged and demonstrated that the father had failed in the payment of child support obligations and demanded a credit in the liquidation of the community property equal to the outstanding child support payments.

In **Rivera Robledo, p. 577,** the Court held that should it be demonstrated before the Court of First Instance that the father did not fulfill the child support obligations imposed upon him by the Court, the mother has a reimbursement claim against the father for expenses incurred by her using her own money to cover outstanding child support payments of the minors that were the responsibility of the father.[3]

---

[3] De quedar demostrado ante el Tribunal de instancia que el señor Figueroa Robledo incumplió con la pensión ordenada por el tribunal, la señora Rivera Rosa tiene disponible una acción de reembolso contra el señor Figueroa Robledo por los gastos en que incurrió, a costa de su propio peculio para cubrir los gastos de manutención de sus hijos menores que correspondían al señor Figueroa.

According to **Rivera Robledo, supra,** a claim for reimbursement is contingent upon a

supporting parent's failure to comply with his court imposed child support obligations.

On November 30, 1994, the Superior Court, Bayamon Part, notified a judgment in

**Melendez v. Baez, Case No. D DI1992-3701.** In its pertinent part, said Judgment: Gave sole

custody over MJMB to Baez. (*See* **Exhibit # 6, pag. 1, ¶ 2.**) As custodial parent, the Court did

not impose upon Baez any child support obligations. In addition, as demonstrated above, Baez

fulfilled her child support obligations. Since Baez fulfilled her child support obligations,

Plaintiff is not entitled to a reimbursement claim.

        3.    PLAINTIFF HAS NOT PAID IN EXCESS TO WHAT HE HAD TO
            PAY

Plaintiff has not paid in excess to what he had to pay. In **Lopez Martinez v. Yordan, p.**

**836,** the Puerto Rico Supreme Court held the following:

> The situation is governed by art. 153 of the Civil Code (31
> L.P.R.A. § 601) which imposes the obligation to support the
> unemancipated children on the father as well as on the mother, and
> specifically by art. 145 (31 L.P.R.A. § 564) upon providing that
> when the obligation to support devolves upon two or more persons,
> the amount that each shall pay be proportionate to his respective
> estate.

(See also **Calvo Mangas, p. 308; Mundo, p. 559; Figueroa Robledo, p. 572.**)

In **Mundo, p. 561,** the Puerto Rico Supreme Court limited the admissible credit as

follows: "the admissible credit is limited to what a party has paid 'in excess of what he or she

[has] to.'"

On the one hand, Plaintiff's child support obligation in 1994 was $600.00/month. (*See*

**Exhibit 6, p. 2, ¶ 6.**) Please note, this was the result of a stipulated agreement between the

parties. (*See* **Exhibit # 6.**) On the other hand, presently Plaintiff's child support obligations

amount to $2,484.00/month. (*See* **Exhibit 9.**) The result of two years of aggressive litigation

between the parties. In fifteen (15) years, Plaintiff's child support obligations quadrupled. Plaintiff's original child support obligations did not reflect the actual amount Plaintiff should have paid.

As a matter of example, there is evidence that during the year 2000 Plaintiff could have earned $89,040/year. (See **Exhibit # 3.**) Thus, Plaintiff possibly made $7,420.00/month.[4] In turn, at the same time, Baez earned $880/month. (See **Exhibit # 1, ¶ 4.**) In the year 2000 MJMB was ten (10) years old. Under the Guides to Determine and Modify Child Support in Puerto Rico[5] for a Supporting Parent earning $7,420.00/month the basic pension alone for one ten (10) year old minor would be $1645.00/month. In addition, Plaintiff would have been responsible for 89%[6] of the minor's supplementary expenses: care, education, health and shelter. If this calculations are remotely true, then Plantiff would have been responsible for paying much more than $600.00 a month during the relevant years.

Plaintiff moves this Court to find that any payment beyond the $600.00 dollars imposed back on 1994 was an excess payment which entitled him to the present reimbursement claim. Evidently, $600.00/month is not even remotely close to the actual amount Plantiff was responsible for. Consequently, Plaintiff has not paid in excess to what he had to pay and is not entitled to the present reimbursement claim.

4.    IN PUERTO RICO CONTRACTS IN EXCESS OF $300.00 MUST BE IN WRITING

In Puerto Rico contracts in excess of $300.00 must be in writing. Section 82 of the Puerto Rico Commerce Code, in its relevant part establishes the following: "The testimony of

---

[4] This is the sort of genuine controversy of material fact that renders as premature Plaintiff's motion for summary judgment.
[5] Baez used the 2006 guidelines for this exercise.
[6] Evidently, these figures need adjustment. Full discovery would enable Baez to make a more accurate analysis. Again this is the sort of genuine issue of material fact that prevents the issuance of a Summary Judgment at this state of the proceedings.

witnesses shall not in itself be sufficient to prove the existence of a contract the amount of which

exceeds three hundred dollars, unless such testimony concurs with other evidence. (*See* **10**

**P.R.L.A. § 1302.**)

In **Vila & Hnos., Inc. v. Owens Ill. de P.R., 117 D.P.R. 825, 833 (1986) [__ P.R. Offic.**

**Trans. 987, 997]** , the Puerto Rico Supreme Court held the following: "the testimony of a

witness shall not in itself be sufficient to prove the existence of a contract the amount of which

exceeds three hundred dollars, unless such testimony concurs with other evidence."

On the one hand, Plaintiff claims entered into a contractual obligation with Baez

regarding child support obligations that amount to $27,782.00. for amounts exceeding $300.00.

(*See* **Docket Document # 1, pp. 3-5, ¶¶ 9, 14 and 16.**) In turn, Baez has consistently denied the

existence of any contractual agreement between the parties regarding child support obligations.

(*See* **Docket Document # 11, pp. 3-3, ¶¶ 9, 14, and 16.**) Since $27,782.00 vastly exceeds

$300.00 and Plaintiff has no concurring evidence besides his testimony to prove the existence of

said contract, Plaintiff simply cannot prove the existence of said contract.

  D. IN THE PRESENT CASE THERE ARE GENUINE ISSUES OF MATERIAL
     FACTS WHICH PREVENT THE ISSUANCE OF A SUMMARY JUDGMENT
     IN FAVOR OF PLAINTIFF

In the present case there are genuine issues of material facts which prevent the issuance

of a summary judgment in favor of Plaintiff:

  1. Whether Plaintiff actually overpaid child support;

  2. How much money Plaintiff made in 1998;

  3. How much money Plaintiff would have actually had to pay for child

support in 1998 according to his earnings;

  4. How much money Plaintiff made in 1999;

5.     How much money  Plaintiff would have actually had to pay for child

support in 1999

6.     How much money Plaintiff made in 2000;

7.     How much money Plaintiff would have actually had to pay for child

support in 2000;

8.     How much money  Plaintiff made in 2001;

9.     How much money  Plaintiff would have actually had to pay for child

support in 2001;

10.    How much money  Plaintiff made in 2002;

11.    How much money Plaintiff would have actually had to pay for child

support in 2002;

12.    Whether all the deposits in Baez account which Plaintiff claims he made

were actually made by Plaintiff.  In her answer to ¶ 18 of the Complaint Baez stated the

following:



        The allegations contained in paragraph 18 of the complaint do not
        require a responsive pleading.   However, should a responsive
        pleading be required, the allegations are denied.  [Plaintiff]
        manipulates the data in a self serving manner.  [Plaintiff] unduly
        ascribed to himself many of the deposits that appear in Baez'
        account.  Thereby, [Plaintiff] willfully attempts to induce this
        Court into error.

Specifically, Baez contests whether Plaintiff made the following deposits:

| Date | Amount | Source | Reference |
|------|--------|--------|-----------|
| 12/28/99 | $500.00 | Unknown | Docket Document # 1, Exhibit 1, Pag. 1 |
| 1/13/2000 | $300.00 | Unknown | Docket Document # 1, Exhibit 1, Pag. 1 |
| 1/18/2000 | $700.00 | Unknown | Docket Document # 1, Exhibit 1, Pag. 1 |

| | | | |
|---|---|---|---|
| 2/15/2000 | $500.00 | Unknown | Docket Document # 1, Exhibit 1, Pag. 1 |
| 2/22/2000 | $100.00 | Unknown | Docket Document # 1, Exhibit 1, Pag. 1 |
| 2/28/2000 | $300.00 | Unknown | Docket Document # 1, Exhibit 1, Pag. 1 |
| 3/1/2000 | $510.00 | Unknown | Docket Document # 1, Exhibit 1, Pag. 1 |
| 3/30/2000 | $500.00 | Unknown | Docket Document # 1, Exhibit 1, Pag. 1 |
| 8/14/2001 | $600.00 | Unknown | Docket Document # 1, Exhibit 1, Pag. 2 |
| 8/17/2001 | $800.00 | Unknown | Docket Document # 1, Exhibit 1, Pag. 2 |
| 9/4/2001 | $800.00 | Unknown | Docket Document # 1, Exhibit 1, Pag. 2 |
| 9/11/2001 | $800.00 | Unknown | Docket Document # 1, Exhibit 1, Pag. 2 |
| 9/17/2001 | $500.00 | Unknown | Docket Document # 1, Exhibit 1, Pag. 2 |
| 10/01/2001 | $300.00 | Unknown | Docket Document # 1, Exhibit 1, Pag. 2 |
| 10/15/2001 | $500.00 | Unknown | Docket Document # 1, Exhibit 1, Pag. 2 |
| 10/19/2001 | $450.00 | Unknown | Docket Document # 1, Exhibit 1, Pag. 2 |
| 10/25/2001 | $500.00 | Unknown | Docket Document # 1, Exhibit 1, Pag. 2 |
| 10/30/2001 | $300.00 | Unknown | Docket Document # 1, Exhibit 1, Pag. 2 |
| 11/13/2001 | $337.00 | Unknown | Docket Document # 1, Exhibit 1, Pag. 3, |
| 11/13/2001 | $500.00 | Unknown | Docket Document # 1, Exhibit 1, Pag. 3 |
| 12/6/2001 | $300.00 | Unknown | Docket Document # 1, Exhibit 1, Pag. 3 |
| 12/10/2001 | $800.00 | This comes from my work in Hotel La Playa | Docket Document # 1, Exhibit 1, Pag. 3 |
| 12/17/2001 | $300.00 | Unknown | Docket Document # 1, Exhibit 1, Pag. 3 |
| 1/22/2002 | $850.00 | This comes from my work in Hotel La Playa | Docket Document # 1, Exhibit 1, Pag. 3 |
| 4/6/2001 | $200.00 | Does not exist | Docket Document # 1, Exhibit 1, Pag. 3, and |



| | | | Docket Document # 1, Exhibit 2, Pag. 26 |
|---|---|---|---|
| 4/25/2001 | $400.00 | Unknown | Docket Document # 1, Exhibit 1, Pag. 3 |
| 7/20/2001 | $100.00 | Unknown | Docket Document # 1, Exhibit 1, Pag. 3 |
| 7/30/2001 | $585.00 | Unknown | Docket Document # 1, Exhibit 1, Pag. 3 |
| 12/6/2001 | $300.00 | Unknown | Docket Document # 1, Exhibit 1, Pag. 3 |
| 12/6/2001 | $500.00 | Does not exist | Docket Document # 1, Exhibit 1, Pag. 3, and Docket Document # 1, Exhibit 2, Pag. 38 |
| 12/6/2001 | $200.00 | Does not exist | Docket Document # 1, Exhibit 1, Pag. 3, and Docket Document # 1, Exhibit 2, Pag. 38 |
| 12/10/2001 | $800.00 | This one is repeated. See above. | Docket Document # 1, Exhibit 1, Pag. 3 |
| 12/17/2001 | $500.00 | Does not exist | Docket Document # 1, Exhibit 1, Pag. 3, and Docket Document # 1, Exhibit 2, Pag. 39 |
| 1/22/2002 | $850. 00 | This comes from my work at Hotel La Playa. | Docket Document # 1, Exhibit 1, Pag. 3 |

**WHEREFORE,** Baez respectfully requests that the Honorable Court:



A.   Take notice of the above;

B.   Abstain from entertaining the present proceedings;

C.   In its defect, Dismiss Plaintiff's Motion for Summary Judgment;

D.   In its defect, Find that Plaintiff is not entitled to a reimbursement claim under

Puerto Rico Law; and

E.   Take any other appropriate measure provided by law.

**RESPECTFULLY SUBMITTED**

In San Juan, Puerto Rico, this 15th of June of 2009.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this same date, a true and exact copy of the foregoing document was sent, by first class mail, to: **William Eric Melendez**, Cond. Brisas del Parque Escorial, Apt. 3502, Carolina, Puerto Rico 00987.

**Ms. Mei-Ling M. Baez Godinez**
Urb. Laderas de San Juan
86 Calle Ortegon H-9
San Juan, Puerto Rico 00926
Tel. (787) 349-8999

By:_____
Mei-Ling M. Baez Godinez
e-mail: meibaez@hotmail.com