## UNSWORN DECLARATION UNDER PENALTY OF PERJURY

1.     At all relevant times Plaintiff worked as a Computer Systems Analyst.

2.     Presently, Plaintiff has over twenty years of experience in his field of work.

3.     Close to the end of 1998 Baez accompanied Plaintiff to a branch of Banco Popular of Puerto Rico, located in Rio Piedras, for the purpose of getting a mortgage for purchasing a house located in Sevilla Biltmore C-20, Guaynabo, Puerto Rico 00969.  At that time, the Bank Officer asked Melendez how much money he made.  Baez heard when Melendez told the bank officer that he made about $115,000.00/annually.

4.     At all relevant times Baez earned $880.00/month plus certain other sporadic amounts which were the result of Baez design work and clerk work at the Hotel La Playa.

5.     MJMB suffers from Type 1 Diabetes, the most predatory kind of diabetes which requires constant care and supervision.

6.     For the most part, it has been Baez who has taken care and supervised MJMB.

7.     At all relevant times, Baez retained sole custody over MJMB.

8.     At all relevant times, Baez was in charge of preparing and serving food to MJMB, MJMB kept the house clean and in order and Baez also took MJMB to school for her education and to the doctor in case of sickness.

9.     During that time, Baez tried to work twice.  In one occasion, Baez tried to work in design society and as part of the design team in the Banco Popular of Puerto Rico.  On both occasions Plaintiff prevented Baez from pursuing a professional career design arguing that he gave me everything I needed and that our daughter, due to her medical condition, needed my constant presence.

Baez' Unsworn Declaration Under Penalty of Perjury

10.     Each time Plaintiff changed of jobs, he would automatically increase the amounts he

would deposit on my account.

11.     According to Plaintiff, each time he changed jobs he got better paid which was reflected

in the voluntary increases he made on his deposits.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 15, 2009

Mei-Ling Baez Godinez

2



UNITED STATES DEPARTMENT OF LABOR

www.bls.gov          Search: All BLS.gov                    for:              Search

**125 YEARS**                          Newsroom | Tutorials | Release Calendar
**BUREAU OF LABOR STATISTICS**

Home     Subject Areas     Databases & Tables     Publications     Economic Releases     A - Z Index | About BLS

INFLATION | SPENDING | UNEMPLOYMENT | EMPLOYMENT | PAY & BENEFITS | PRODUCTIVITY | INJURIES

## Occupational Employment Statistics          OES | FONT SIZE: | PRINT:

**BROWSE OES**

OES HOME

OES OVERVIEW

OES NEWS RELEASES

OES DATABASES

OES TABLES

OES PUBLICATIONS

OES FAQS

CONTACT OES

**SEARCH OES**

[          ] Go

**OES TOPICS**

ARCHIVED DATA

CHARTS & MAPS

INFORMATION FOR
RESPONDENTS

TECHNICAL
DOCUMENTATION

# 1999 National Occupational Employment and Wage Estimates

## 15-1051 Computer Systems Analysts

Analyze science, engineering, business, and all other data processing problems for application to electronic data processing systems. Analyze user requirements, procedures, and problems to automate or improve existing systems and review computer system capabilities, workflow, and scheduling limitations. May analyze or recommend commercially available software. Exclude persons working primarily as "Engineers" (17-2011 through 17-2199), "Mathematicians" (15-2021), or "Scientists" (19-1011 through 19-3099). May supervise computer programmers.

These estimates are calculated with data collected from employers in all industry divisions in metropolitan and non-metropolitan areas in every State and the District of Columbia.

Employment estimate and mean wage estimates for this occupation:

| Employment | 428,210 | RSE = 3.1 % |
|---|---|---|
| Mean hourly wage | $27.85 | RSE = 0.7 % |
| Mean annual wage | $57,920 | RSE = 0.7 % |

(1)

Percentile wage estimates for this occupation:

| Percentile | 10% | 25% | 50% (Median) | 75% | 90% |
|---|---|---|---|---|---|
| Hourly Wage | $17.23 | $21.59 | $26.91 | $33.16 | $40.86 |
| Annual Wage | $35,840 | $44,910 | $55,980 | $68,980 | $84,990 |

(1)
About 1999 National, State, and Metropolitan Area Occupational Employment and Wage Estimates

Percentile wage estimates show what percentage of workers in an occupation earn less than a given wage and what percentage earn more. The median wage is the 50th percentile wage estimate—50 percent of workers earn less than the median and 50 percent of workers earn more than the median. More about percentile wages.

(1) Annual wages have been calculated by multiplying the hourly mean wage by a "year-round, full-time" hours figure of 2,080 hours; for those occupations where



there is not an hourly mean wage published, the annual wage has been directly calculated from the reported survey data.

The relative standard error (RSE) is a measure of the reliability of a survey statistic. The smaller the relative standard error, the more precise the estimate.

All

Computer and Mathematical Occupations

1999 National Occupational Employment and Wage Estimates

1999 State Occupational Employment and Wage Estimates

1999 Metropolitan Area Occupational Employment and Wage Estimates

1999 National Industry-Specific Occupational Employment and Wage Estimates

Technical notes

List of Occupations in SOC Code Number Order

List of Occupations in Alphabetical Order

**Last modified:** October 16, 2001

Quick Links



| **Tools** | **Calculators** | **Help** | **Info** |
|---|---|---|---|
| At a Glance Tables | Inflation | Help & | What's New |
| Economic News | Location | Tutorials | Careers @ BLS |
| Releases | Quotient | A to Z Index | Find It! DOL |
| Databases & Tables | Injury And | FAQs | Join our Mailing Lists |
| Maps | Illness | Glossary | Privacy & Security |
|  |  | About BLS | Linking & Copyright |
|  |  | Contact Us | Information |

Back to Top        Freedom of Information Act | Customer Survey | Do you have a technical Web site question?

**U.S. Bureau of Labor Statistics Division of Occupational Employment Statistics** Suite 2135, 2 Massachusetts Avenue, NE Washi
**http://www.bls.gov/OES** | Telephone: (202) 691-6569 | Fax: (202) 691-6444 Do you have an **OES data questi**

http://www.bls.gov/oes/1999/oes151051.htm                                              6/14/2009





UNITED STATES DEPARTMENT OF LABOR

www.bls.gov          Search: All BLS.gov                    for:                Search

**125 YEARS**
**BUREAU OF LABOR STATISTICS**          Newsroom | Tutorials | Release Calendar

Home    Subject Areas    Databases & Tables    Publications    Economic Releases    A - Z Index | About BLS

| INFLATION | SPENDING | UNEMPLOYMENT | EMPLOYMENT | PAY & BENEFITS | PRODUCTIVITY | INJURIES |

## Occupational Employment Statistics          OES   FONT SIZE:   PRINT:

**BROWSE OES**

OES HOME

OES OVERVIEW

OES NEWS RELEASES

OES DATABASES

OES TABLES

OES PUBLICATIONS

OES FAQS

CONTACT OES

**SEARCH OES**

[      ] Go

**OES TOPICS**

ARCHIVED DATA

CHARTS & MAPS

INFORMATION FOR RESPONDENTS

TECHNICAL DOCUMENTATION

# 2000 National Occupational Employment and Wage Estimates

## 15-1051 Computer Systems Analysts

Analyze science, engineering, business, and all other data processing problems for application to electronic data processing systems. Analyze user requirements, procedures, and problems to automate or improve existing systems and review computer system capabilities, workflow, and scheduling limitations. May analyze or recommend commercially available software. Exclude persons working primarily as "Engineers" (17-2011 through 17-2199), "Mathematicians" (15-2021), or "Scientists" (19-1011 through 19-3099). May supervise computer programmers.

These estimates are calculated with data collected from employers in all industry divisions in metropolitan and non-metropolitan areas in every State and the District of Columbia.

Employment estimate and mean wage estimates for this occupation:

| Employment | 463,300 | RSE = 2.0 % |
|---|---|---|
| Mean hourly wage | $29.43 | RSE = 0.6 % |
| Mean annual wage | $61,210 | RSE = 0.6 % |

(1)

Percentile wage estimates for this occupation:

| Percentile | 10% | 25% | 50% (Median) | 75% | 90% |
|---|---|---|---|---|---|
| Hourly Wage | $18.01 | $22.59 | $28.53 | $35.20 | $42.81 |
| Annual Wage | $37,460 | $46,980 | $59,330 | $73,210 | $89,040 |

(1)
About 2000 National, State, and Metropolitan Area Occupational Employment and Wage Estimates

Percentile wage estimates show what percentage of workers in an occupation earn less than a given wage and what percentage earn more. The median wage is the 50th percentile wage estimate—50 percent of workers earn less than the median and 50 percent of workers earn more than the median. More about percentile wages.

(1) Annual wages have been calculated by multiplying the hourly mean wage by a "year-round, full-time" hours figure of 2,080 hours; for those occupations where




there is not an hourly mean wage published, the annual wage has been directly calculated from the reported survey data.

The relative standard error (RSE) is a measure of the reliability of a survey statistic. The smaller the relative standard error, the more precise the estimate.

All

Computer and Mathematical Occupations

2000 National Occupational Employment and Wage Estimates

2000 State Occupational Employment and Wage Estimates

2000 Metropolitan Area Occupational Employment and Wage Estimates

2000 National Industry-Specific Occupational Employment and Wage Estimates

Technical notes

List of Occupations in SOC Code Number Order

List of Occupations in Alphabetical Order

**Last Modified Date:** November 15, 2001

Quick Links 

| Tools | Calculators | Help | Info |
|---|---|---|---|
| At a Glance Tables | Inflation | Help & | What's New |
| Economic News | Location | Tutorials | Careers @ BLS |
| Releases | Quotient | A to Z Index | Find It! DOL |
| Databases & Tables | Injury And | FAQs | Join our Mailing Lists |
| Maps | Illness | Glossary | Privacy & Security |
|  |  | About BLS | Linking & Copyright |
|  |  | Contact Us | Information |



UNITED STATES DEPARTMENT OF LABOR

www.bls.gov    Search: All BLS.gov    for:    Search

**125 YEARS**    Newsroom | Tutorials | Release Calendar
**BUREAU OF LABOR STATISTICS**

Home    Subject Areas    Databases & Tables    Publications    Economic Releases    A - Z Index | About BLS

| INFLATION | SPENDING | UNEMPLOYMENT | EMPLOYMENT | PAY & BENEFITS | PRODUCTIVITY | INJURIES |

## Occupational Employment Statistics

OES    FONT SIZE:    PRINT:

**BROWSE OES**

OES HOME
OES OVERVIEW
OES NEWS RELEASES
OES DATABASES
OES TABLES
OES PUBLICATIONS
OES FAQS
CONTACT OES

**SEARCH OES**

[ ] Go

**OES TOPICS**

ARCHIVED DATA
CHARTS & MAPS
INFORMATION FOR RESPONDENTS
TECHNICAL DOCUMENTATION

# 2001 National Occupational Employment and Wage Estimates

## 15-1051 Computer Systems Analysts

Analyze science, engineering, business, and all other data processing problems for application to electronic data processing systems. Analyze user requirements, procedures, and problems to automate or improve existing systems and review computer system capabilities, workflow, and scheduling limitations. May analyze or recommend commercially available software. Exclude persons working primarily as "Engineers" (17-2011 through 17-2199), "Mathematicians" (15-2021), or "Scientists" (19-1011 through 19-3099). May supervise computer programmers.

## 2001 National Occupational Employment and Wage Estimates

These estimates are calculated with data collected from employers in all industry divisions in metropolitan and non-metropolitan areas in every State and the District of Columbia. These and other data elements, including the 10th, 25th, 75th, and 90th percentile wages are available in the downloadable excel files. Estimates do not include self-employed workers.

Employment estimate and mean wage estimates for this occupation:

|  |  | RSE (3) |
|---|---|---|
| **Employment (1)** | 448,270 | 3.3 % |
| **Mean hourly wage** | $30.63 | 0.7 % |
| **Mean annual wage (2)** | $63,710 | 0.7 % |

Percentile wage estimates for this occupation:

| Percentile | 10% | 25% | 50% (Median) | 75% | 90% |
|---|---|---|---|---|---|
| **Hourly Wage** | $18.69 | $23.48 | $29.80 | $37.01 | $44.81 |
| **Annual Wage (2)** | $38,870 | $48,840 | $61,990 | $76,970 | $93,200 |

About 2001 National, State, and Metropolitan Area Occupational Employment and Wage Estimates

Percentile wage estimates show the percentage of workers in an occupation that earn less than a given wage and the percentage that earn more. The median wage is the 50th percentile wage estimate—50 percent of workers earn less than the median and 50 percent of workers earn more than the median. More about percentile wages.



(1) Data for detailed occupations does not sum to the totals because the totals include data for occupations not shown separately.

(2) Annual wages have been calculated by multiplying the hourly mean wage by a "year-round, full-time" hours figure of 2,080 hours; for those occupations where there is not an hourly mean wage published, the annual wage has been directly calculated from the reported survey data.

(3) The relative standard error (RSE) is a measure of the reliability of a survey statistic. The smaller the relative standard error, the more precise the estimate.

All

Computer and Mathematical Occupations

2001 National Occupational Employment and Wage Estimates

2001 State Occupational Employment and Wage Estimates

2001 Metropolitan Area Occupational Employment and Wage Estimates

2001 National Industry-Specific Occupational Employment and Wage Estimates

Technical notes

List of Occupations in SOC Code Number Order

List of Occupations in Alphabetical Order

**Last Modified Date:** December 23, 2002

Quick Links

| **Tools** | **Calculators** | **Help** | **Info** |
|---|---|---|---|
| At a Glance Tables | Inflation | Help & | What's New |
| Economic News | Location | Tutorials | Careers @ BLS |
| Releases | Quotient | A to Z Index | Find It! DOL |
| Databases & Tables | Injury And | FAQs | Join our Mailing Lists |
| Maps | Illness | Glossary | Privacy & Security |
| | | About BLS | Linking & Copyright |
| | | Contact Us | Information |

 **Back to Top**        Freedom of Information Act | Customer Survey | Do you have a technical Web site question?

**U.S. Bureau of Labor Statistics Division of Occupational Employment Statistics** Suite 2135, 2 Massachusetts Avenue, NE Washi

**http://www.bls.gov/OES** | Telephone: (202) 691-6569 | Fax: (202) 691-6444 Do you have an **OES data questi**



UNITED STATES DEPARTMENT OF LABOR

www.bls.gov              Search: All BLS.gov                    for:                         Search

125 YEARS                                    Newsroom | Tutorials | Release Calendar

# BUREAU OF LABOR STATISTICS

**Home     Subject Areas     Databases & Tables     Publications     Economic Releases     A - Z Index | About BLS**

| INFLATION | SPENDING | UNEMPLOYMENT | EMPLOYMENT | PAY & BENEFITS | PRODUCTIVITY | INJURIES |

## Occupational Employment Statistics                    OES | FONT SIZE: ⊖⊕ PRINT:

**BROWSE OES**

OES HOME

OES OVERVIEW

OES NEWS RELEASES

OES DATABASES

OES TABLES

OES PUBLICATIONS

OES FAQS

CONTACT OES

**SEARCH OES**

[          ] Go

**OES TOPICS**

ARCHIVED DATA

CHARTS & MAPS

INFORMATION FOR
RESPONDENTS

TECHNICAL
DOCUMENTATION

# Occupational Employment and Wages, 2002

## 15-1051 Computer Systems Analysts

Analyze science, engineering, business, and all other data processing problems for application to electronic data processing systems. Analyze user requirements, procedures, and problems to automate or improve existing systems and review computer system capabilities, workflow, and scheduling limitations. May analyze or recommend commercially available software. Exclude persons working primarily as "Engineers" (17-2011 through 17-2199), "Mathematicians" (15-2021), or "Scientists" (19-1011 through 19-3099). May supervise computer programmers.

National estimates for this occupation
Industry profile for this occupation
State profile for this occupation
Metropolitan area profile for this occupation

## National estimates for this occupation:

## Top

Employment estimate and mean wage estimates for this occupation:

| Employment (1) | Employment RSE (3) | Mean hourly wage | Mean annual wage (2) | Wage RSE (3) |
|---|---|---|---|---|
| 467,750 | 2.1 % | $31.20 | $64,890 | 0.5 % |

Percentile wage estimates for this occupation:

| Percentile | 10% | 25% | 50% (Median) | 75% | 90% |
|---|---|---|---|---|---|
| Hourly Wage | $18.88 | $23.80 | $30.24 | $37.67 | $44.90 |
| Annual Wage (2) | $39,270 | $49,500 | $62,890 | $78,350 | $93,400 |

## Industry profile for this occupation:

## Top

Industries with the highest levels of employment in this occupation:

| Industry | Employment | Hourly mean wage | Annual mean wage | Employment rank | Wage rank |
|---|---|---|---|---|---|
| Computer systems design and related services | 96,240 | $34.35 | $71,450 | 1 | 5 |

| | | | | | |
|---|---|---|---|---|---|
| Federal government (OES designation) | 60,900 | $33.35 | $69,370 | 2 | 15 |
| Insurance carriers | 32,510 | $28.65 | $59,590 | 3 | 96 |
| Management of companies and enterprises | 23,670 | $30.68 | $63,810 | 4 | 55 |
| Data processing and related services | 17,860 | $31.48 | $65,490 | 5 | 39 |

Top paying industries for this occupation:

| Industry | Employment | Hourly mean wage | Annual mean wage | Employment rank | Wage rank |
|---|---|---|---|---|---|
| Oil and gas extraction | 1,030 | $37.36 | $77,710 | 43 | 1 |
| Grocery and Related Product Wholesalers | 130 | $36.27 | $75,450 | 117 | 2 |
| Satellite telecommunications | 110 | $34.78 | $72,350 | 125 | 3 |
| Pharmaceutical and medicine manufacturing | 3,310 | $34.39 | $71,530 | 27 | 4 |
| Computer systems design and related services | 96,240 | $34.35 | $71,450 | 1 | 5 |

## State profile for this occupation:

## Top

States with the highest concentration of workers in this occupation:

| State | Employment | Hourly mean wage | Annual mean wage | Percent of State employment | Wage rank within State |
|---|---|---|---|---|---|
| District of Columbia | 8,830 | $36.81 | $76,560 | 1.484% | 47 |
| Maryland | 20,240 | $32.92 | $68,460 | 0.833% | 61 |
| Virginia | 24,660 | $32.36 | $67,310 | 0.728% | 61 |
| Massachusetts | 18,970 | $30.57 | $63,580 | 0.593% | 93 |
| Colorado | 11,230 | $33.10 | $68,850 | 0.527% | 54 |

Top paying States for this occupation:

| State | Employment | Hourly mean wage | Annual mean wage | Percent of State employment | Wage rank within State |
|---|---|---|---|---|---|
| District of Columbia | 8,830 | $36.81 | $76,560 | 1.484% | 47 |
| New Jersey | 16,760 | $36.72 | $76,370 | 0.435% | 57 |
| Georgia | 17,210 | $34.29 | $71,310 | 0.455% | 36 |
| New York | 26,830 | $33.35 | $69,370 | 0.324% | 82 |
| Colorado | 11,230 | $33.10 | $68,850 | 0.527% | 54 |

## Metropolitan area profile for this occupation:

## Top



Metropolitan areas with the highest concentration of workers in this occupation:

| MSA | Employment | Hourly mean wage | Annual mean wage | Percent of MSA employment |
|---|---|---|---|---|
| Springfield, IL MSA | 1,700 | $28.37 | $59,000 | 1.525% |
| Huntsville, AL MSA | 2,470 | $29.97 | $62,340 | 1.415% |
| Washington, DC-MD-VA-WV PMSA | 36,150 | $34.60 | $71,960 | 1.355% |
| Austin-San Marcos, TX MSA | 6,250 | $28.91 | $60,130 | 0.964% |
| Madison, WI MSA | 2,510 | $26.22 | $54,540 | 0.904% |

Top paying Metropolitan areas for this occupation:

| MSA | Employment | Hourly mean wage | Annual mean wage | Percent of MSA employment |
|---|---|---|---|---|
| Middlesex-Somerset-Hunterdon, NJ PMSA | 4,700 | $40.58 | $84,400 | 0.750% |
| Jersey City, NJ PMSA | 1,200 | $39.33 | $81,800 | 0.492% |
| Danbury, CT PMSA | 300 | $38.37 | $79,810 | 0.339% |
| Bloomington-Normal, IL MSA | (6) | $38.18 | $79,410 | (6) |
| Salinas, CA MSA | 860 | $37.49 | $77,980 | 0.568% |

About 2002 National, State, and Metropolitan Area Occupational Employment and Wage Estimates

To see profiles of other occupations, select from the major groups below:

Select a major group to view 

These estimates are calculated with data collected from employers in all industry sectors in metropolitan and non-metropolitan areas in every State and the District of Columbia. The top five employment and wage figures are provided above. The complete list is available in the downloadable Excel files(XLS).

Percentile wage estimates show the percentage of workers in an occupation that earn less than a given wage and the percentage that earn more. The median wage is the 50th percentile wage estimate—50 percent of workers earn less than the median and 50 percent of workers earn more than the median. More about percentile wages.

(1) Data for detailed occupations does not sum to the totals because the totals include data for occupations not shown separately. Estimates do not include self-employed workers.

(2) Annual wages have been calculated by multiplying the hourly mean wage by a "year-round, full-time" hours figure of 2,080 hours; for those occupations where there is not an hourly mean wage published, the annual wage has been directly calculated from the reported survey data.

(3) The relative standard error (RSE) is a measure of the reliability of a survey statistic. The smaller the relative standard error, the more precise the estimate.

(6) Estimates not released.



All

Computer and Mathematical Science Occupations

2002 State Occupational Employment and Wage Estimates

2002 Metropolitan Area Occupational Employment and Wage Estimates

2002 National Industry-Specific Occupational Employment and Wage Estimates

List of Occupations in SOC Code Number Order

List of Occupations in Alphabetical Order

Download 2002 Occupational Employment and Wage Estimates in Zipped Excel files

Technical notes

**Last Modified Date:** November 26, 2003

Quick Links

| Tools | Calculators | Help | Info |
|---|---|---|---|
| At a Glance Tables | Inflation | Help & | What's New |
| Economic News | Location | Tutorials | Careers @ BLS |
| Releases | Quotient | A to Z Index | Find It! DOL |
| Databases & Tables | Injury And | FAQs | Join our Mailing Lists |
| Maps | Illness | Glossary | Privacy & Security |
| | | About BLS | Linking & Copyright |
| | | Contact Us | Information |

 **Back to Top**        Freedom of Information Act | Customer Survey | Do you have a technical Web site question?

U.S. Bureau of Labor Statistics Division of Occupational Employment Statistics Suite 2135, 2 Massachusetts Avenue, NE Washi

http://www.bls.gov/OES | Telephone: (202) 691-6569 | Fax: (202) 691-6444 Do you have an OES data questi

ESTADOS UNIDOS DE AMERICA.
EL PRESIDENTE DE LOS ESTADOS UNIDOS ]  SS—
ESTADO LIBRE ASOCIADO DE P.R.

TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL  SUPERIOR SALA DE BAYAMON

MELENDEZ MELENDEZ, WILLIAM                    CASO NUM: D DI92-3701
    DEMANDANTE                                     SALON: 0701
        VS.
BAEZ GODINEZ, MEI-LING                  DIVORCIOS
    DEMANDADO                               CAUSAL O DELITO

NOTIFICACION DE SENTENCIA

EL SECRETARIO QUE SUSCRIBE NOTIFICA A USTED QUE ESTE TRIBUNAL HA DICTADO
SENTENCIA EN EL CASO DE EPIGRAFE CON FECHA 06 DE JUNIO DE 1994      , QUE HA
SIDO DEBIDAMENTE  REGISTRADA Y  ARCHIVADA EN LOS AUTOS DE ESTE CASO, DONDE
PODRA USTED ENTERARSE DETALLADAMENTE DE LOS TERMINOS DE LA MISMA.

Y, SIENDO O REPRESENTANDO USTED LA PARTE PERJUDICADA POR LA SENTENCIA,
DE LA CUAL PUEDE  ESTABLECERSE  RECURSO DE  APELACION, DIRIJO A  USTED ESTA
NOTIFICACION, HABIENDO  ARCHIVADO EN LOS AUTOS DE ESTE  CASO COPIA DE ELLA

TORRES PERALTA SARAH
PO BOX 19-1976                  SAN JUAN PR
                               00919-1996

JULIA RAMOS ENRIQUE G
                               MATA REY PR
                               00917

BAYAMON        , PUERTO RICO, A 30 DE NOVIEMBRE DE 1994

                    MOISES COTTO VILLANUEVA
                    ----------------------------------------
                              SECRETARIO

                    POR: M. MARRERO
                    ----------------------------------------
                              SECRETARIO AUXILIAR

E.B. THE WILLIAM MELENDEZ MENENDEZ
MEI-LING SAEZ GODINEZ

Peticionarios

EX PARTE

$Exhibit 6$

SOBRE DIVORCIO (T.C.)

## SENTENCIA

La vista del caso de epígrafe se celebró el 20 de abril de 1994, a las nueve de la mañana. Comparecieron ambos peticiona-rios por sí, y además representados por sus respectivos abogados, la licenciada Sarah Torres Peralta en representación del peti-cionario, y el licenciado Enrique Juliá Ramos en representación de la peticionaria.

Accedimos a la solicitud de ambos comparecientes de que se les permitiera enmendar la causal invocada para solicitar la di-solución del matrimonio, a la de consentimiento mutuo. Escucha-das las declaraciones bajo juramento de ambos peticionarios, y a la luz de las mismas y de los autos del caso, los siguien-tes hechos quedaron establecidos a nuestra completa satisfacción:

1. Los peticionarios son domiciliados] y residentes perma-nentes de Puerto Rico, inclusive el último año inmediatamente precedente a la fecha de radicación de la demanda. Ambos están casados entre sí, habiendo contraído matrimonio el 8 de abril de 1990 en Carolina, Puerto Rico, conforme a certificado de ma-trimonio que obra en autos.

2. De dicho matrimonio se procreó una hija de nombre María Judith Meléndez Godínez, quien nació el 13 de octubre de 1991, la que vive bajo la custodia y en compañía de la madre pe-ticionaria.

3. Los peticionarios acordaron el divorcio por consenti-miento mutuo en forma voluntaria y sin coacción ni presión algu-na. Los peticionarios están de acuerdo en que han cesado los

E.B.T.

2

fines para los cuales se constituye la relación matrimonial.

4. La petición de divorcio por consentimiento mutuo presen-
tada, complementada por acuerdos estipulados en corte abierta, y
por la presentación de las planillas de información personal y
económica en autos, cumplen con la reglamentación vigente apli-
cable a las disoluciones de matrimonios por consentimiento mutuo.

5. En corte abierta, el peticionario acordó entregar y en-
tregó a la paticionaria la suma de $500.00, que ésta aceptó,
en pago por transacción de informadas sumas adeudadas por con-
cepto de pensión alimenticia atrasada. Ambas partes estuvieron
de acuerdo en que en virtud de dicho pago, el peticionario está
al día en su obligación de pago de pensión de alimentos para be-
neficio de la hija de ambos. Aprobamos dicha estipulación.

6. En corte abierta los peticionarios estuvieron de acuerdo
en que el peticionario pagará la suma de $600 mensuales como
pensión alimentaria para beneficio de la hija menor de ambos, y
que dicho pago se hará mediante consignación judicial, con fecha
de efectividad de 1ro de junio de 1994, ya que por acuerdo de
ambos, estipularon que el padre estaba al día en el pago de las
pensiones hasta el mes de mayo de 1994 incluido.

7. En adición a la pensión alimentaria en efectivo, el padre
peticionario también se compromete a pagar el costo anual de la
matrícula anual, y además el pago mensual de los plazos mensua-
les escolares por diez meses correspondientes al curso escolar
ordinario. Este pago lo hará el peticionario en forma directa.

8. Como parte de la pensión alimentaria a ser pagada por el
padre peticionario, éste también mantendrá en vigor como hasta el
presente el plan médico existente para beneficio de la hija menor
de los peti...

9. Po... ...de los peticionarios la cust...

paterno  ...  ... en en la misma forma que están fijadas
hasta el presente ... ...  patria potestad sobre dicha hija menor
será compa... ... ... dos padres.

E.B.T.

--- no hay bienes gananciales, excepto por un vehículo de motor marca Cherokee, con deuda sustancial, que por acuerdo de los peticionarios le corresponderá al peticionario, y que éste se hará cargo del pago de la totalidad de la deuda.

El Tribunal ha examinado y considerado cuidadosamente el alcance de los acuerdos informados por ambos peticionarios bajo juramento. Específicamente solicitamos y obtuvimos información constitutiva de justa causa para la aparente variación, de haberse aplicado técnicamente las Guías, y satisfechos de la explicación recibida, le impartimos nuestra aprobación a los acuerdos sobre pago de alimentos de la hija de los peticionarios. La peticionaria fué advertida expresamente por este Tribunal de que salvo las causas de ley, la pensión acordada y aprobada judicialmente no será revisada hasta pasados tres años desde esta fecha.

Igualmente le impartimos nuestra aprobación a los demás acuerdos informados antes indicados, y en tal virtud por la presente dictamos SENTENCIA decretando, como decretamos, la disolución del matrimonio de los peticionarios por la causal de consentimiento mutuo, haciendo formar parte de esta sentencia todo lo antes indicado, sin costas ni honorarios.

REGISTRESE Y NOTIFIQUESE.

DADA en Bayamón, Puerto Rico, hoy 8 de junio de 1994.

LUIS ROSARIO VILLANUEVA
JUEZ SUPERIOR



— Exhibit 7 —

E.B.T.

## EN EL TRIBUNAL DE PRIMERA INSTANCIA SALA DE BAYAMON

Civil Número DDI 92-3701(701)
Sobre: Divorcio (T.C.)

WILLIAM MELENDEZ MENENDEZ
Demandante
VS.
MEI-LING BAEZ GODINEZ
Demandada

## RÉPLICA

AL HONORABLRE TRIBUNAL:

Comparece el demandante, por derecho propio, quien expone y solicita en contestación a la SOLICITUD DE DESACATO POR INCUMPLIMIENTO DE PENSIÓN ALIMENTARIA Y SOLICITUD DE CUMPLIMIENTO Y MODIFICACIÓN DE RELACIONES PATERNO FILIALES como sigue:

## MOCIÓN DE DESACATO

1. Como parte del divorcio entre el demandante y la demandada se estableció una pensión alimentaria de $600 mensuales en favor de la hija de ambos, María Judith Meléndez Báez, y los gastos escolares de ésta – que al momento eran un gasto misceláneo de unos $50 mensuales, toda vez que la demandada era estudiante y aún no percibía ingresos.

2. El demandante ha pagado a la demandada alrededor de $38,000 en exceso y por encima de la pensión arriba requerida por el tribunal, además de cubrir todos los gastos de la menor beneficiaria de la misma, en señal de su abnegación, sacrificio y altruismo para con su hija. Ha realizado dichos pagos directamente a la demandada de la siguiente manera:

Desde 1994 al presente una suma en exceso a **$97,700** desglosada de la manera siguiente:

   a) $600 mensuales, entregados a la mano, desde septiembre de 1994, hasta agosto del 1997, para un total de 98 pagos, que totalizan: **$21,600.**

   b) $450 bisemanales, por depósito directo a su cuenta de banco, desde agosto de 1997 hasta noviembre de 1999, para un total de 68 pagos, que totalizan **$30,600.**

   c) $900 mensuales, entregados a la mano, desde noviembre 1999 hasta enero del 2000, para un total de 3 pagos, que totalizan **$2,700.**

   d) $1,000 mensuales, por depósito directo a su cuenta de banco, desde

E.B.T.

e)  $800 bisemanales, por depósito directo a su cuenta de banco, desde agosto del 2000, hasta agosto del 2001, para un total de 26 pagos, que totalizan **$20,800.**

# E.B.T.

f) $1,600 mensuales, entregados a la mano, desde septiembre del 2001 a enero del 2002, para un total de 6 pagos, que totalizan **$9,600.**

g) $600 mensuales, entregados a la mano, desde febrero del 2002, hasta octubre del 2002, para un total de 9 pagos, que totalizan **$5,400.**

3. El demandante estima que, por cambios en el ciclo de la industria de la informática en que se desempeña, los ingresos de la demandada superan los suyos desde al menos julio del 2001 hasta el presente.

4. El demandante le ha requerido a la demandada desde entonces que ambos comparezcan a ajustar la obligación alimentista de cada cual, pero ésta se ha negado a ajustar la pensión alimentaria por vía del tribunal, y en los expedientes de ASUME, ya que no remite pagos al Seguro Social, ni al Secretario de Hacienda por sus ingresos, por lo que tener que divulgar su fuente y cuantía de ingresos bajo juramento sería en su detrimento.

5. La demandada acordó en noviembre del 2002 que lo único que estaría dispuesta a conceder en cuanto al inciso anterior es eximir de responsabilidad al demandante de emitir pagos subsiguientes por concepto de pensión alimentaria, en vista sobre todo que la niña pasa casi todo su tiempo bajo el cuido del demandante.

6. No obstante lo anterior, a principios de marzo del 2003, la demandada nuevamente faltó a su palabra, cambió de parecer, y con la intención de financiar un viaje de compras a la ciudad de New York que se propone en el futuro cercano, intenta amedrentar al demandante para que este le pagué la suma de $3,000.

7. Aunque si bien es cierto que el demandante no le ha hecho pagos a la demandada desde noviembre del 2002 hasta el presente, éste no ha obviado su responsabilidad como alimentista, dentro de los límites que sus ingresos reducidos en los últimos meses se lo han permitido, de la manera siguiente:

   a. Mensualidad escolar de $411, un gasto mucho mayor a los $50. mensuales que gastaban al momento de imponerse la pensión vigente.
   b. Gastos para atender la condición de diabetes de la niña de $200. mensuales.
   c. Matrícula de $1,050.
   d. Visita al médico en el Joslin Diabetes Clinic de Boston, MA de $2,500.
   e. Compra de comida de $600. mensuales.
   f. Pagos de hipoteca de $1,600. mensuales para amortizar deuda de inmueble donado a un fideicomiso en favor de la niña, destinado a asegurar sus gastos de educación secundarios, universitarios y post-graduados.

8. La demandada, en cambio, aunque posee los medios para sufragarse gastos suntuosos y extravagantes de viajes en cruceros, joyas, prendas, otros viajes al exterior y cenas en restaurantes a diario, se ha negado a asistir al demandante en los gastos más apremiantes y necesarios de la hija de ambos, como lo son los de educación, médicos y alimentación.

PETICIÓN DE CUMPLIMIENTO ESPECÍFICO DE RELACIONES

E.B.T.

9. La menor beneficiaria de la pensión, María Judith Meléndez Báez, vive ahora, y desde noviembre de 1998, a tiempo completo con el demandante, en la siguiente dirección:

Sevilla Biltmore C-20
Guaynabo, PR 00969

E.B.T.

10. La demandada ha compartido intermitentemente el hogar arriba indicado con el, demandante y la hija de ambos, según su estilo de vida de mujer soltera y sus relaciones íntimas se la han permitido desde noviembre del 1998 hasta mayo del 2002.

11. La demandante alquiló un apartamento en nombre propio en mayo del 2002, y ha dejado a la hija de las partes bajo el cuidado del demandante exclusivamente desde mayo del 2002 hasta junio del 2002, y desde octubre del 2002 hasta el presente.

12. La demandante ha limitado su contacto con su hija a recogerla en la escuela a la hora de sálida, sólo para dejarla al cuido del demandante hasta el día siguiente.

13. Es falso que el demandante ha impedido que la demandada se relacione con su hija. Sólo la dejadez y negligencia de la demandada en cuidar y procurar a su propia hija han limitado que éstas compartan.

14. La única oportunidad en que el demandante se negó a entregar a su hija a la demandada fue la noche del miércoles 12 de marzo de 2003, cuando la niña le pidió a éste que no la dejara ir con su madre, ya que ésta se dirigía a la niña con lenguaje soez y amenazante, y estaba amenazándola con agredirla tan pronto la recogiera. El demandante se vió obligado a llamar al sistema de emergencias "911" en su auxilio, quienes lo refirieron al departamento de Emergencias Sociales.

15. Sólo después de ser advertida por sus familiares y amigos de que el hecho de que la menor vive a tiempo completo con el demandante pudiera limitar su reclamo a la pensión alimenticia, es que la demandada ha procurado la compañía de su hija durante la semana.

16. La condición de diabetes de la hija menor de las partes requiere que ésta sea mantenida en un régimen estricto de dieta y ejercicios con el cual la demandada no cumple, siendo el demandante quien único procura que esto ocurra.

17. La [...] también se niega [...] declaran [...]

18. La costumbre de dirigir la hija a saludos [...] casa de los hombres con quienes comparte la intimidad, lo que perturba e incomoda a la niña, ya que este comportamiento está encontrado con los principios morales que aprende en su colegio católico, y con el comportamiento de los demás padres de sus compañeros de escuela y del círculo social en que se mueve.

19. La demandada mantiene a la niña bajo estado de intimidación, ya que agrede e injuria a la misma, minando su autoestima y sentido de valía, y amenaza, si la niña solicita la compañía y protección de su padre.

20. La misma niña, quien ya cuenta con la edad de 12½ años cumplidos, ha expresado su deseo de continuar viviendo con el demandante a tiempo completo, y sólo compartir con su madre ocasionalmente. Entiende la niña, que sólo su padre es quien muestra preocupación por su bienestar físico y emocional, y quien es capaz de proveerle un ejemplo de comportamiento moral cónsono con la enseñanza

**SOLICITUD**

E.B.T.

Por todo lo anterior, el demandante solicita:



E.B.T.

1. Que se desestime la moción de desacato.
2. Que se acrediten al demandante los pagos hechos en exceso por concepto de pensión alimenticia.
3. Que se imponga a la demandada responsabilidad por el pago de pensión alimenticia al demandante, y en favor de María Judith Meléndez Báez, con carácter retroactivo a Julio del 2001, fecha en que sus ingresos comenzaron a ser mayores que los del demandante.
4. Que se actualice el expediente y ASUME, de manera que refleje ausencia de obligación por parte del demandante a favor de la demandada.
5. Que se cite a las partes para determinar el monto que la demandada adeuda al demandante por concepto de los gastos extraordinarios de la menor María Judith Meléndez, los cuales aunque es por responsabilidad de ambos, el demandante ha sufragado en su totalidad.
6. Que se entreviste a la menor para obtener su parecer en cuanto a dónde y con quien desea vivir a tiempo completo.
7. Que se desestime la SOLICITUD DE CUMPLIMIENTO Y MODIFICACIÓN DE RELACIONES PATERNO FILIALES.
8. Que se establezcan con carácter de urgencia la siguientes relaciones paterno filiales:
   a. Con el padre desde los viernes al salir de la escuela, hasta los martes al salir de la escuela, cuando puede ser recogida por su madre.
   b. En casa de la madre de martes al viernes, pero llevando a la niña todos estos días al gimnasio Powerhouse de Guaynabo, donde el padre supervisará su programa de ejercicios.

CERTIFICO: estar enviando copia de esta moción a Mei-Ling Báez Godínez, a través de su abogada, Evelyn Benvenutti vía fax al 787.977.3401.

Respetuosamente,

William E. Meléndez
Sevilla Biltmore C-20
Guaynabo, PR
00969
Tel. 787.379.7011
22 de marzo de 2003

— Exhibit 8 —

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL DE PRIMERA INSTANCIA**
**SALA SUPERIOR DE SAN JUAN**

508

| | |
|---|---|
| William Eric Meléndez Menéndez, | Civil Núm. KCD09- 0159 |
| Demandante, | Sala: |
| v. | Sobre: **Cobro de Dinero** |
| Mei-Ling Báez Godínez, | |
| Demandada. | |

## DEMANDA

**AL HONORABLE TRIBUNAL:**

**COMPARECE**, la parte demandante, *Pro Se*, y respetuosamente EXPONE, ALEGA Y SOLICITA:

### I. Introducción

1. William Meléndez Menéndez, de 47 años de edad, es Contador Público Autorizado, casado y vecino de Carolina, Puerto Rico, y aspirante a ser admitido a la práctica de la abogacía.

2. Mei-Ling Báez Godínez, es por información o creencia, de 40 años de edad, es decoradora, soltera y vecina de San Juan, Puerto Rico.

3. La demandada es madre custodia de María Judith Meléndez Báez, de 18 años, quien fue procreada durante el matrimonio de ésta con el demandante.

4. La presente acción emana de pagos que el demandante ha emitido a la demandada para cubrir los gastos relativos al sustento de la hija menor de ambos, en exceso de la pensión alimentaria impuesta por el Tribunal en el caso **D DI1992-3701** ante el Tribunal Superior – Sala de Bayamón, y trasladado ahora al caso **K DI2008-0969** ante el Tribunal Superior – Sala de San Juan.

5. Durante todo el período relativo a esta causa de acción la demandada se negó a descargar su responsabilidad alimentaria para con la hija menor que procrearon las partes durante su corto matrimonio.

6. Entre los años 1995 y 2002 la demandada contrató y se comprometió con el demandante al reembolso de los pagos en exceso antes descritos y realizados por éste.

7. No obstante, hasta la fecha ha ignorado todos los intentos de cobro o reclamaciones de crédito que el demandante le ha señalado, y ha suspendido efectivamente todo nivel de comunicación con éste.

## II. Las Partes

8. El demandante contrajo nupcias con su actual esposa -- Ninoshka González González – el 9 de noviembre de 2007, en la ciudad de New York, NY, y bajo las leyes de ese estado. Su dirección residencial es el 3502 del Condominio Brisas de Escorial, Carolina, Puerto Rico. Su número telefónico es el (787)379-7011.

9. La demandada reside en la Urbanización Laderas de San Juan 86, calle Ortegón H-9, en San Juan, Puerto Rico, junto con Daniel Pérez y la hija menor que procreó con el demandante. Su número telefónico es el (787)349-8999.

10. Al momento de los hechos que más adelante se detallan entre los años 1997 y 2002, las partes habían disuelto su matrimonio y vivían vidas independientes de sí desde 1992, cuando incialmente se separaron, y finalmente divorciaron en 1994.

## III. Relación de Hechos

11. Las partes contrajeron matrimonio en abril de 1990, en el municipio de Carolina, Puerto Rico.

12. Durante el matrimonio procrearon una hija, María Judith Meléndez Báez, nacida el 13 de octubre de 1990.

13. El matrimonio, junto con su hija menor, residieron juntos desde septiembre de 1990 hasta enero de 1992 en el condominio Plaza Inmaculada, en Santurce, Puerto Rico.

14. Durante el 1992 la demandada abandonó el hogar que compartía con el demandante y la hija de ambos, para vivir intermitentemente con un compañero en el área de Caparra, en Guaynabo, Puerto Rico, y con una tía por vínculo materno en la urbanización Garden Hills, en Guaynabo, Puerto Rico.

15. La hija menor de las partes quedó bajo el cuidado exclusivo del demandante, quién pasó a residir con sus padres, en la urbanización el Señorial, en Río Piedras, Puerto Rico.

16. El demandante interpuso demanda divorcio y peticionó la custodia de la menor en noviembre de 1992.

17. Dicho matrimonio quedó disuelto por divorcio en o alrededor de marzo, 1994.

18. Al momento de la disolución del matrimonio quedó también disuelta la sociedad legal de gananciales, sin prestaciones por resolver por ninguno de los ex cónyuges.

19. La demandada retuvo custodia de la menor.

20. La obligación del demandante por el pago de pensión alimentaria a favor de la menor María Judith Meléndez Báez quedó fijada en $600.00 mensuales.

21. Durante el año 1994 a la menor se le diagnosticó la condición de diabetes.

22. La demandada exigió al demandante que la menor fuera tratada exclusivamente en la clínica Joslin Diabetes Center, en Boston, Massachusetts, por no haber podido procurar cuidado médico competente para la menor dentro de Puerto Rico.

23. La demandada, bajo dolo, engaño y fraude representó al demandante que carecía de medios económicos para aportar la parte que le correspondía de los gastos extraordinarios del tratamiento, por lo que el costo total del tratamiento fue cubierto por el demandante.

24. El demandante estima preliminarmente que haya llevado a la menor al Joslin
Diabetes Center en Boston, Massachusetts en alrededor de 10 ocasiones, en las
cuales cubrió los gastos estimados en, cada instancia, de:

    a. pasaje aéreo - $1,000.00.

    b. habitación - $900.00

    c. tratamientos no cubiertos por el plan médico - $1,000.00.

    d. comida y transportación local - $400.00.

25. El demandante estima preliminarmente que de los $3,300.00 estimados para
cada visita al Joslin Diabetes Center, para un total de $33,000.00, la parte
correspondiente a la demandada, y no satisfecha por ella, es de al menos la
mitad, o **$16,500.00**.

26. En agosto de 1997 el demandante se relocalizó fuera de Puerto Rico por razón
de su empleo, y regresó a Puerto Rico por la misma razón en octubre de 2002.

27. Desde 1997, mientras el demandante estaba empleado fuera de Puerto Rico, la
demandada le representó que los gastos médicos de la menor habían
incrementado sustancialmente, y que los ingresos de la demandada y la pensión
de $600.00 le resultaban insuficientes para cubrirlos.

28. Las partes contrataron en agosto de 1997:

    a. que el demandante depositaría entre $1,000.00 y $1,600.00 mensuales en
la cuenta de banco de la demandada;

    b. que dicho pago cubriría los $600.00 de la pensión alimentaria a favor de
su hija menor.

    c. que la demandada produciría periódicamente para el demandante los
recibos que acreditasen que en efecto estaba incurriendo los gastos
médicos alegados para el tratamiento médico de la menor.

4

d. que la demandada vendría obligada a reembolsar al demandante el dinero en exceso de los $600.00 de la pensión alimentaria que no se utilizaran para gastos médicos de la menor.

e. que la demandada vendría obligada a reembolsar al demandante la parte que a ella le correspondiera de los gastos médicos extraordinarios antes descritos.

29. Entre agosto de 1997 y octubre de 2002, período durante el cual el demandado trabajó fuera de Puerto Rico, la demandada no produjo evidencia alguna que acreditara los desembolsos para el tratamiento médico de la menor.

30. El demandante estima preliminarmente el pago en exceso de su obligación alimentaria entre agosto de 1997 y octubre de 2002 en $38,000.00.

31. Dichos pagos constan en los registros del RG Premier Bank (Martínez Nadal Branch 19, Guaynabo, P.R. 00657), en la cuenta número 0211022478, a nombre de la demandada.

32. En noviembre de 1997, estando el demandante relocalizado fuera de Puerto Rico, la demandada le representó que había perdido su único medio de transporte, por lo cual carecía de los medios necesarios para que la menor pudiera asistir a la escuela y a sus citas médicas. La demandada con ello solicitó al demandante un préstamo para adquirir un automóvil nuevo.

33. El demandante, en su lugar, adquirió un vehículo Toyota modelo 4-Runner, a un costo de financiamiento de $675.00 mensuales y sobre el cual mantuvo titularidad, y lo puso a la disposición de la demandada por el corto plazo y temporeramente hasta que la demandada resolviera su problema de transporte.

34. Desde noviembre de 1997, hasta que el demandante regresó a Puerto Rico en octubre de 2002, la demandada representó no haber podido resolver su problema de transportación, por lo que retuvo el uso exclusivo del vehículo antes descrito, sin reembolsar al demandante por este beneficio.

35. El demandante recupero posesión del vehículo a su regreso a Puerto Rico en octubre de 2002.

36. El demandante estima preliminarmente el costo de transportación en interés de su hija antes descrito, y en exceso de su obligación alimentaria entre noviembre de 1997 y octubre de 2002 en **$40,500.00**.

37. En noviembre de 1998, estando el demandante relocalizado fuera de Puerto Rico, la demandada le representó que no podía cubrir el costo de renta del apartamento donde residía con la menor, y que el arrendador le había requerido que desocupara el mismo, contrariado por la frecuencia en la que le eran devueltos por el banco por insuficiencia de fondos los cheques que la demandada emitía para cubrir los cánones de arrendamiento.

38. Como consecuencia, el demandante puso a la disposición de su hija menor – quien vivía en compañía de la demandada - un inmueble que había adquirido en Guaynabo, Puerto Rico, hasta tanto la demandada pudiera recuperarse económicamente y resolver su problema de vivienda.

39. La demandada continuó representando al demandante que no se había recuperado económicamente, y no desocupó la propiedad del demandante hasta que éste se volvió a relocalizar en Puerto Rico en octubre de 2002.

40. El costo total de mantener la residencia recayó y fue cubierto exclusivamente por el demandante, y se desglosó mensualmente en $2,870.00 entre las siguientes partidas:

    a.  Hipoteca - $1,600.00

    b.  Electricidad - $300.00

    c.  Agua - $200.00

    d.  Cable TV y telecomunicaciones - $200.00

    e.  Mantenimiento - $120.00

    f.  Empleada domestica - $450.00

41. El demandante estima preliminarmente el costo de vivienda en interés de su hija antes descrito, y en exceso de su obligación alimentaria entre noviembre de 1998 y octubre de 2002 en $137,760.00.

El demandante estima preliminarmente que las partidas anteriores arrojan un total de $232,760.00, que el demandante ha satisfecho en exceso de su obligación alimentaria, que tiene por ello un crédito por esa cantidad en contra de la demandada, y el correspondiente derecho a reembolso.

**IV. Acción de Reembolso o Repetición**

42. El demandante reitera y adopta por referencia cada uno y todos los párrafos anteriores.

43. La causa de acción de reembolso o repetición a favor del demandante surge de las siguientes disposiciones del Código Civil de Puerto Rico, y su interprepatación por el Tribunal Supremo de Puerto Rico:

   a. Art. 153 (**31 LPRA sec. 601**) que impone la obligación de alimentar los hijos no emancipados tanto al padre como a la madre.

   b. Art. 145 (**31 LPRA sec. 564**) que dispone que cuando recaiga sobre dos o más personas la obligación de dar alimentos, se repartirá entre ellos el deber de alimentar en cantidad proporcionada a su caudal respectivo: **López Martínez v. Yordan**, 104 D.P.R. 594, 597 (1976); **Calvo Mangas v. Aragonés Jiménez**, 115 D.P.R. 219, 229 (1984); **Mundo v. Cervoni**, 115 D.P.R. 422, 424 (1984).

   c. Art. 1112 (**31 L.P.R.A. sec. 3162**) que regula la figura del pago por tercero: **Eastern Sands, Inc. v. Riog Comm. Bank**, 140 D.P.R. 703, 719 (1996); **Figueroa Robledo v. Rivera Rosa**, 149 D.P.R. 565, 568 (1999).

7

**V. Remedio Solicitado**

44. Que el Honorable Tribunal tome conocimiento de todo lo anterior.

45. Que el Honorable Tribunal declare Con Lugar la presente demanda.

46. Que el Honorable Tribunal reconozca el crédito de **$232,760.00** a favor del demandante.

47. Que el Honorable Tribunal ordene a la demandada satisfacer la deuda anterior a favor del demandante.

48. Que el Honorable Tribunal inponga costas y honorarios a favor del demandante.

49. Cualquier otro remedio que en ley proceda.

En San Juan, Puerto Rico, hoy    de                de 2009.

William Eric Meléndez Menéndez
3502 Brisas de Escorial
Carolina, Puerto Rico  00987
Tel. (787) 379-7011

Por: _____

8



# Asume al Día En Línea

**Número de Participante/ID : 000000000509588**

Información sobre sus casos en la ASUME.

|  | Persona Custodia | Persona no Custodia | Num. Caso | Balance | Pensión | Frecuencia |
|---|---|---|---|---|---|---|
| Seleccione | BAEZ GODINEZ MEI | MELENDEZ MENENDEZ WILLIAM | 000000000081392 | $17,326.15 | $2,484.00 | MENSUAL |
|  |  |  |  |  |  |  |

Salir de la Cuenta          Editar Participante          Ver transacciones ÚNICA

**Cambio en la forma de ver sus transacciones con la tarjeta Única**
Para facilitar el accesso a la información de las transacciones realizadas con la tarjeta Única, hemos cambiado la manera de ver las mismas desde nuestro servicios en línea. Ahora para configurar su tarjeta y ver las transacciones relizadas con ella, al oprimir el botón de "Ver transacciones ÚNICA", será transferido al portal de transacciones de EBT Puerto Rico (www.ebtpr.com). Una vez allí, debe seguir las instrucciones para crear su nombre y contraseña para el uso en ese portal. Gracias.

## Advertencia

De usted identificar discrepancias con la información, debe de comunicarse o acudir a la oficina Local correspondiente de la ASUME para aclarar la misma.

## Importante

La información de pagos de pensiones alimentarias que se despliega en esta página de Internet, es sobre pagos recibidos y emitidos a partir del mes de enero del año 2005. Esta información se actualiza diariamente. Si necesita información de pagos anteriores a esta fecha, por favor comuniquese, libre de costo, con ASUME al día al 1-888-711-0011.

## Instrucciones

Presione la palabra "Seleccione" a la izquierda de cada caso para acceder el historial de pagos.

¿Tuvo problemas técnicos? Presione aquí para solicitar ayuda técnica.